DAVID KENNEDY AND MAGGIE KENNEDY v. CHARLES E. GIBSON.

No. 13,326.    (75 Pac. 1044.)

SYLLABUS BY THE COURT.

1. PROMISSORY NOTES—*Mortgage—Provisions in Note Prevail.* Where a promissory note provides that default in the payment of interest shall mature the whole debt, at the option of the holder, and a mortgage given to secure payment of the note provides that defaults shall mature the debt, but makes no mention of an option in the holder, the provision in the note will control.

2. ——— *Limitation of Actions.* In such a case, and where there is default in the payment of interest and the holder does not exercise the option and declare the debt due, the statute of limitations will not begin to run until the expiration of the time originally fixed for the payment of the note.

3. ——— *Sufficient Defense—Fraud.* An answer alleging illegality and fraud in the inception of a note sets up a defense, and the presumptions in favor of the right and title of the holder are overcome, and to meet such a defense it devolves upon the holder to show that he or some antecedent holder took the note before maturity, in good faith, for value, and in the usual course of business.

Error from Ellis district court; LEE MONROE, judge. Opinion filed March 12, 1904.    Reversed.

STATEMENT.

THIS was an action brought by Charles E. Gibson to recover on a promissory note for $600, executed by David Kennedy and wife in favor of L. N. Bessette, and to foreclose a mortgage given to secure its payment. The note and mortgage were transferred to one Jenness and by him to Gibson. The note contained a stipulation that if default was made in the payment of interest, or there was non-compliance with the requirements of the mortgage, the principal and interest should all become due and payable at

once, at the option of the holder.   The mortgage, on
the other hand, contained a provision that if default
was made in the payment of interest or taxes, or if
the insurance was not kept up, the mortgage should
become absolute and the whole of the debt should be-
come due and payable.   A demurrer to the petition
was presented, which raised the question whether or
not the action was barred by the statute of limitations,
but it was overruled.   The answer was, first, a gen-
eral denial; second, an allegation that the notes were
without consideration, and void, as the defendants
were never indebted to Bessette, Jenness or Gibson
when the notes were executed, nor since that time, in
any sum of money; third,

"That the said notes were obtained from the said
defendants by and through the fraud, false repre-
sentations, oppression and coercion of one E. C. Waldo,
who was the agent of the said L. N. Bessette men-
tioned in plaintiff's petition filed herein, at the time
the said notes purport to have been given by these de-
fendants, and taken in the name of the said L. N.
Bessette, and that the said notes were procured by the
fraudulent means and false representations of the said
E. C. Waldo, agent as aforesaid, in this, to wit:

"That prior to the time of the alleged giving of the
notes sued upon in this action, on, to wit, during the
months of July and August, 1892, the said defendants
sought to secure an extension of the time of payment
upon a then existing mortgage upon the premises de-
scribed in the plaintiff's petition, which said mortgage
and the note, the payment of which it was given to
secure, became due and payable on the 1st day of
September, 1892; that the said E. C. Waldo claimed
to represent the then reputed owner and holder of the
said note and mortgage last above mentioned, one
John Leighton, of Portsmouth, New Hampshire, and
to whom they had, before that time, paid the interest
on the note which the last above mortgage was given
to secure; that the said E. C. Waldo represented to

these defendants that he had heard from their man, John Leighton; and requested them to come into his office in Ellis, Kansas, and sign up papers to complete said extension, and that said request was made at or after the time the said note and mortgage became due and payable; that said defendants, relying upon said representations of the said E. C. Waldo, came at the time and place appointed by the said E. C. Waldo, for the purpose of extending the time of payment of the mortgage aforesaid, and for no other purpose; that the said E. C. Waldo then presented these defendants with the note and mortgage sued upon in this action, and that these defendants then and there objected to signing the same for the reason that they were not made payable to the said John Leighton, who was represented to be the then owner and holder of the note and mortgage, the payment of which was sought to be extended by these defendants; that these defendants then and there, and before that time, told the said E. C. Waldo, agent as aforesaid, that they wanted an extension of the time of payment on the old note and mortgage and nothing else, and to contract for the same with the said John Leighton, and no other person, as he was represented by the said E. C. Waldo to be the owner and holder of the said note and mortgage, the payment of which was sought to be extended, and these defendants then and there refused to contract with the said L. N. Bessette.

"Thereupon, the said E. C. Waldo represented to these defendants that the said L. N. Bessette was a partner of the said John Leighton, who lived in Portsmouth, N. H., and that he, the said L. N. Bessette, was interested in the old mortgage, and assured these defendants that by contracting with the said L. N. Bessette they were contracting with the said John Leighton, which representations were wholly false and untrue, as the said E. C. Waldo well knew at the time, and were so wilfully and falsely made by the said E. C. Waldo, for the purpose of procuring the notes and mortgage sued upon in this action, and that at the time the notes sued upon in this action purport to have been given by these defendants they did not re-

ceive the return of the old note and mortgage, nor any release thereof, nor any money or any other consideration from the said L. N. Bessette, nor at any other time ; that shortly after the said fraudulent procurement of the notes and mortgage sued upon in this action these defendants learned that the said representations of the said E. C. Waldo were wholly false and untrue, and that the said L. N. Bessette was the cashier of the Merchants' State Bank, of Ellis, in Ellis county, Kansas, and was in the bank at the time said notes and mortgage were procured, but never revealed his whereabouts or identity to these defendants ; that when these defendants learned the same, and that the aforesaid representations of the said E. C. Waldo were wholly false and untrue, they went to the said E. C. Waldo and the said L. N. Bessette, at the Merchants' Bank, of Ellis, and told them, as they had done all along, that they did not want to contract, and would not contract with any person connected with said bank or any other person other than the said John Leighton, and demanded the return of the notes and the mortgage sued upon in this action and other papers connected with the transaction ; that said E. C. Waldo and L. N. Bessette refused to return said notes and mortgage and other papers, and thereupon these defendants then and there notified the said E. C. Waldo and L. N. Bessette that by reason of the aforesaid fraud, misrepresentations and want of consideration they would never pay a cent of said note ; that said defendants gave notice to all parties concerned, including the plaintiff herein, that said notes and mortgage were procured by fraud, mirepresentation, deceit, and were without consideration, and void, and that payment of the same would be resisted ; that said defendants did not owe L. N. Bessette the said amount named in said notes sued upon in this action at the time said notes purport to have been given by these defendants, and did not receive any consideration therefor, and do not owe him nor David Jenness, nor the plaintiff herein, the said sum of money sued for on said notes, or any other sum whatever."

The fourth defense related to the alleged invalidity of the assignment of the note and mortgage ; and the fifth pleaded the statute of limitations.

The sufficiency of the second and third defenses of the answer was challenged by a demurrer which was sustained by the court. Upon a trial being had, the court found in favor of the plaintiff, and gave judgment against the Kennedys for the amount of the note and accrued interest, and decreed a foreclosure of the mortgage.

*David Rathbone*, *J. P. Shutts*, and *J. T. Nolan*, for plaintiffs in error.

*W. E. Saum*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J. : The first contention is that, under the averments of the petition, the action was barred by the statute of limitations, and that therefore the demurrer should have been sustained. The note was dated September 1, 1892, and was payable September 1, 1897. According to the date fixed for maturity, the statute would not bar the note until September, 1902, and this action was brought in May, 1900. The contention, however, is that maturity was accelerated by the stipulations as to the effect of default in the payment of interest. The default occurred on March 1, 1893, and it is claimed that the cause of action accrued at that time. The note provided that a default should mature the entire debt, at the option of the holder, while the provision in the mortgage was that a default made the whole debt due, regardless of an election by the holder. Which of these provisions should control? In the absence of an option clause in the note, the stipulation in the mortgage would

have operated to mature the whole debt upon a default, and the mortgagors could have taken advantage of the stipulation. (*National Bank v. Peck*, 8 Kan. 660.) The stipulation in the note as to default, however, conflicts with that of the mortgage, and, of necessity, the former controls. The note contains the obligations of the mortgagors, and the mortgage, concurrently executed, is an incident to and security for the note. The stipulation in the note must therefore prevail, and unless the holder exercised the option and elected to declare the whole debt due, the statute would not run earlier than the time originally fixed for the maturity of the note. (*Hutchinson v. Benedict*, 49 Kan. 545, 31 Pac. 147 ; *Keys v. Lardner*, 55 id. 331, 40 Pac. 644 ; *Wilcox v. Eadie*, 65 id. 459, 70 Pac. 338 ; *York-Ritchie Co. v. Mitchell*, 6 Kan. App. 317, 51 Pac. 57.) As the holder did not exercise the option to declare the whole debt due, the statute did not begin to run until September 1, 1897, and hence the bar was not complete when the action was brought.

The sustaining of the demurrer to the defenses set up in the answer is also assigned as error. The effect of the allegations was that there was fraud in the inception of the note and mortgage, and the verified answer put in issue the averments as to the transfer of the paper. While the defenses were not clearly and tersely stated, they did set forth that the execution was obtained by false representations and fraud. In substance, it was averred that the makers were indebted to one Leighton, who had been represented by Waldo. At the request of Waldo, the Kennedys met him for the purpose of securing an extension of the Leighton debt. Waldo represented that he had authority from Leighton to make the extension and they relied on his representations. When he presented a note and mortgage

for execution they noticed that it was made out in favor of Bessette and declined to execute them, as their purpose was to make papers in extension of the old note and mortgage held by Leighton. Waldo then said that Bessette was a partner of Leighton, was interested with him in the old note and mortgage, and that in dealing with him they were in fact dealing with Leighton. On those representations the note and mortgage in question were executed, but the statements were all false and were fraudulently made, for the purpose of procuring the Kennedys to make the note and mortgage in question. The old notes and mortgage were not returned to them, nor were they released, nor was any money or other consideration given them for the notes in suit.

Shortly after the notes were so fraudulently procured, the Kennedys learned that the representations of Waldo were wholly false; that Bessette was not connected with Leighton, but was connected with a bank in which the notes were executed, and, although present when executed, he did not reveal his identity. They at once went to Waldo and Bessette and challenged their fraudulent action, demanded the return of the note and mortgage, and warned them and all parties concerned that on account of the fraud and lack of consideration the note and mortgage were void and would not be paid by them. The averments are to the effect that the note and mortgage were obtained from them by deception and fraud, in the belief that they were extending an indebtedness already existing. This belief was induced by the representations that there was authority from the holder of the debt to extend the credit by the execution of the new note and mortgage. These representations were false; there was no such authority; the old note and mortgage

were not surrendered or canceled and the makers received no consideration whatsoever. As the note was obtained by fraud, it devolved upon the holder to show that he received it *bona fide,* in the usual course of business, and under circumstances which created no presumption that he knew any facts which impeached its validity. (*Brook v. Teague,* 52 Kan. 119, 34 Pac. 347.)

Having stated facts which, if proved, established fraud in the inception of the note and mortgage, the presumptions in favor of the holder's right and title were overcome and a defense was made out. To meet such a defense, it will be incumbent on Gibson to show that he or some antecedent holder took the paper before maturity, in good faith, for value, and in the usual course of business. The plaintiff did not acquire the note and mortgage until 1899, long after maturity. Then, again, the allegations of the transfer of the paper before maturity were denied, and there was an averment that all of the interested parties were warned of the invalidity of the note and mortgage, and that other acts were done tending to show an absence of negligence by the Kennedys. Whatever the facts may be as developed by the testimony, the averments set up in the answer as defenses are sufficient, we think, to repel the demurrer.

The other objections are not material and do not require special attention ; but for the errors mentioned the judgment will be reversed and the cause remanded for further proceedings.

All the Justices concurring.