## B. F. ABMEYER V. THE FIRST NATIONAL BANK OF HORTON.

No. 15,255.  (92 Pac. 1109.)

SYLLABUS BY THE COURT.

1. FRAUD—*Misrepresentations in the Sale of Personalty—Question for a Jury.* In an action where a party seeks to recoup for deceit practised in the sale of unhusked corn, where there is testimony that the vendor had knowledge and experience which enabled him to determine the quantity of corn in the field, and that the vendee, who was without knowledge or experience in that respect, relied on representations and assurances of the vendor, fraudulently made, that there was a certain quantity of corn in the field, and the sale was made on that basis for a certain price per bushel, and it turned out upon measurement that there was less than one-third of the stated quantity, *held,* that the representations of of the vendor were more than mere expressions of opinion and belief, and whether they constituted a fraud on the vendee was a question of fact for the jury.

2. ——— *Promissory Note—Bona Fide Purchaser—Burden of Proof.* Where it is shown that a note has its inception in fraud the burden of proof is shifted to the indorsee, or holder, to show that he acquired it for a valuable consideration and without notice of defenses or of circumstances which should have put him upon inquiry.

Error from Jackson district court; MARSHALL GEP-HART, judge.  Opinion filed December 7, 1907.  Reversed.

*George H. Whitcomb,* and *Clad Hamilton,* for plaintiff in error.

*E. D. Woodburn, A. E. Crane,* and *F. T. Woodburn,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by the First National Bank of Horton against B. F. Abmeyer to recover on a promissory note for $400 made by Abmeyer to C. A. Wright, who, it was alleged, transferred it to Alex Dunn, jr., who in turn sold and delivered it

to the bank before it became due. Abmeyer answered and offered testimony tending to show that the note was given to Wright in partial payment for certain personal property purchased from Wright, a part of which consisted of corn in the field, which was sold on the basis that it amounted to 1300 bushels but which turned out to be only 431 bushels. There was also an averment and some evidence to show that Abmeyer was an inexperienced man, unable to estimate the quantity of corn in the field, while Wright was a farmer who had raised corn and could estimate the quantity of corn standing in a field with reasonable accuracy; that, for the purpose of deceiving Abmeyer, Wright falsely represented that there were upward of 1300 bushels, worth 38 cents a bushel; and that Abmeyer, believing and relying upon his statement, purchased the corn upon that basis. After testimony was presented for the purpose of showing fraud in the inception of the note there was other testimony offered in an effort to show that Dunn and the bank, of which he was vice-president, were not innocent purchasers of the note. In behalf of the bank Dunn testified that the purchase was made in good faith, and without notice of fraud by Wright in procuring the note, or of any claim of fraud in connection with its execution. At the end of the testimony the trial court directed a verdict in favor of the bank, saying:

"I instruct you that under the evidence in this case, there being no evidence that Alex Dunn, jr., or the plaintiff had any knowledge or notice of any fraud or claim of fraud in the inception of the note, you should find for the plaintiff in the sum of $432.75."

The court was not justified in taking the case from the jury. There was some testimony tending to show that there was fraud in the inception of the note—at least enough to warrant the submission of the question to the jury, and, that being shown, it then devolved on the bank to prove that it was an innocent purchaser. Whether the *prima facie* case arising from proof of

fraud in obtaining the note was overcome by the evidence of innocence offered by the bank was also a question for the jury to determine, but in directing a verdict the court assumed the function of passing upon the credibility of the witnesses and measuring the weight of the testimony on the question.

It is contended that the representations of Wright, if false, were mere matters of opinion, which cannot be regarded as fraudulent. Ordinarily the expression of an opinion or belief by a vendor as to quantity or value, although false, is not a basis of action or ground of relief. Where, however, the parties do not stand upon a basis of equality—where the vendor assumes to have knowledge and asserts an opinion upon a matter of which the vendor is ignorant, and the misrepresentations are made with intent to deceive, the vendee who relies upon and is injured by them is not without remedy.

Here the disparity in the knowledge of the vendor and vendee was marked. Wright was a farmer, accustomed to growing and measuring corn. He assumed to know and stated that there were 1300 bushels of corn in the field, and there was testimony that he sold it upon that basis at the rate of 38 cents per bushel. Abmeyer, on the other hand, was a merchant tailor, wholly without knowledge or experience in measuring corn in the field, whose ignorance and inexperience in the matter were well known to Wright. Wright stated that he was absolutely sure that there were 1300 bushels of the corn, and Abmeyer testified, without dispute, that he bought the corn relying upon the representations of Wright and on his statement that he was selling him the quantity named. Besides the testimony to the effect that the sale was made on the basis of 1300 bushels, there is the supporting circumstance that the parties bargained about the price per bushel to be paid for the corn. Not agreeing as to the price, Wright interviewed a dealer to learn the ruling price of corn in the market, and on the informa-

tion gained the price was finally fixed at 38 cents a bushel. Taking this testimony to be true, the misrepresentations were more than opinions or dealer's talk. Whether the representations were made, whether they were false and made with the intention to deceive, whether Wright took advantage of the ignorance of Abmeyer and made representations and gave assurances such as Abmeyer had a right to rely on, and whether Abmeyer did rely upon them to his injury, were matters which should have gone to the jury under appropriate instructions of the court.

It is said that Abmeyer visited the corn-field in company with a farmer and had an opportunity to learn whether the representations of Wright were true or false, but one who cheats another by a falsehood, intended to deceive, is hardly in a position to say that his victim ought not to have believed him. In *Speed v. Hollingsworth,* 54 Kan. 436, 38 Pac. 496, where a party selling land made false representations as to the number of acres of bottom land in the farm, the number of acres of corn growing on the farm, as well as the rentals of the pasture land, it was contended that the buyer, to whom the representations were made, went upon the farm, and might by inspection and inquiry have discovered the falsity of the representations and therefore had no right to rely upon them. This contention was denied, the court remarking:

"The trend of the decisions of the courts of this and other states is toward the just doctrine that where a contract is induced by false representations as to material existent facts, which are made with the intent to deceive, and upon which the plaintiff relied, it is no defense to an action for rescission or for damages arising out of the deceit that the party to whom the representations were made might, with due diligence, have discovered their falsity, and that he made no searching inquiry into facts. 'It matters not,' it has well been declared, 'that a person misled may be said in some loose sense to have been negligent. . . . For it is not just that a man who has deceived another should be permitted to say to him, "You ought not to have be-

lieved or trusted me," or "You were yourself guilty of negligence." ' "   (Page 440.)

Since there was evidence tending to show fraud in the inception of the note, the burden was upon the bank to show that it acquired the note *bona fide* for value in the usual course of business, and under circumstances which created no presumption that facts impeaching its validity were brought to the notice of the bank or its managers. (*Kennedy v. Gibson,* 68 Kan. 612, 75 Pac. 1044.)   This rule of law placing the burden upon the holder of paper fraudulently obtained appears to have been overlooked, as the court directed a verdict upon the theory that there was an absence of proof that Dunn or the bank had notice of fraud in the inception of the note.   To meet the *prima facie* case arising from proof of fraud testimony was offered of the good faith of the bank and that it had no notice of any fraud on the part of Wright, but whether the *prima facie* case was overcome was a question for the jury, and hence the ruling directing a verdict was error.

The judgment is reversed and the cause remanded for further proceedings.

Burch, Mason, Porter, Graves, Benson; JJ., concurring.

Smith, J. (concurring specially) : I concur in the decision of this case—that it was error for the court to instruct the jury to return a verdict for the defendant.   On the other hand, as this case is remanded for. a new trial, I do not think the law enunciated, presumably as a guide to the court in that new trial, should be based upon the hypothesis that Wright, in his representation of the amount of the corn, acted fraudulently, and that Abmeyer was, in law, absolved from any duty of looking to his own interest.   The evidence shows that the corn was immature when sold, and that Abmeyer called to his aid a farmer friend who went with him and inspected it before closing the deal.   The

friend may or may not have agreed with Wright's estimate of the yield per acre—the evidence, I presume, does not disclose. In either event, Abmeyer, if he had no judgment of his own upon the subject, was, in the exercise of ordinary prudence, bound to rely more upon the estimate of his chosen friend than upon that of his adversary; as, if he had the same means of knowledge as the seller, he was bound to exercise his own judgment, having full opportunity to investigate with little effort, instead of relying upon the estimate of one opposed in interest.

In the absence of the record I am assuming that there was no misrepresentation as to the acreage. If, however, there was such misrepresentation, the truth in relation thereto not being a subject of accurate estimate but involving considerable delay and perhaps expense in ascertainment, the question comes within the principle enunciated in *Speed v. Hollingsworth*, 54 Kan. 436, 38 Pac. 496, cited in the majority opinion, and Abmeyer had a right to rely upon a representation of the fact, which is subject to accurate ascertainment, and of which the owner may be presumed to have been fully informed. But the ultimate yield of immature corn is not such a fact. It is a matter of common knowledge that results equally as disappointing as in this case come from corn-fields that in an immature state promised as great returns as were estimated in this case. The representation was not of an existing fact, peculiarly within the knowledge of the seller, but, in part at least, an estimate of a prospective development. That the result did not reach the estimate does not, necessarily, impeach the good faith of the seller nor of the defendant's farmer friend. One has no right, in the purchase of a horse made in broad daylight and with full opportunity of inspection, to rely upon even a warranty of soundness when the horse has eyes which may be seen for a block to be as white and opaque as a hard-boiled egg with the shell removed.