## LAMBERT v. SMITH.

No. 5995.  Opinion Filed May 16, 1916.

(157 Pac. 909.)

1. **BILLS AND NOTES — Negotiability and Transfer — "Holder in Due Course."** The purchaser of a negotiable instrument, in order to be a holder in due course, must come within the requirements of section 4102, Rev. Laws 1910, defining such holder.

2. **ATTORNEY AND CLIENT — Authority of Attorney — Notice.** Where at the time the note was negotiated to the holder his attorney, acting for and representing him in the particular transaction, had actual knowledge of an infirmity in the note, such knowledge will be imputed to the holder as though the facts were made known to him in person. In such case the principal is chargeable with notice of all such facts as come to his agent's knowledge while acting within the scope of his agency.

3. **BILLS AND NOTES—Actions—Burden of Proof.** When it is shown that the title of any person who has negotiated a negotiable instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course, except as otherwise provided in section 4109, Rev. Laws 1910.

4. **SAME.** The rule placing the burden of proof on the holder obtains where there is fraud in the inception of the note.

5. **SAME—Instructions.** Instructions placing the burden of proving knowledge of infirmity in a negotiable instrument upon the defendant, except in the class of cases provided for in the latter part of section 4109, Rev. Laws 1910, constitute reversible error. Such instructions relieve the plaintiff holder of making proof of a fact necessary to a recovery, and imposes upon the defendant maker the additional duty of establishing to the jury's satisfaction a fact not necessary to his defense.

(Syllabus by the Court.)

*Error from District Court, Alfalfa County;*
*James B. Cullison, Judge.*

Action by G. I. Smith against Sam C. Lambert. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*Titus & Talbot,* for plaintiff in error.

*W. L. Owen, Keith S. Simpson,* and *Noble & Tincher,* for defendant in error.

SHARP, J.   This case presents error from the district court of Alfalfa county.   · Plaintiff,. Smith, brought action against Lambert, to recover on a negotiable promissory note in the sum of $1,000 given by said Lambert and before maturity indorsed by the payee, Vennum, to plaintiff.   Defendant answered, charging, in effect, that said note was without consideration, and was fraudulently procured from him by Vennum and one Ceideburg, and that plaintiff knew at the time or was in possession of facts and information such that his action in· taking the note amounted to bad faith.   The trial resulted in a judgment for plaintiff, from which defendant brings error, assigning, among other errors, the giving of instructions numbered 2 and 5, and the failure to give requested instructions numbered 1, 2, and 3, requested by the defendant.   Instructions numbered 2 and 5 are as follows:

"No. 2.   You are further instructed, however, that the burden of proof is upon the defendant in this case to establish by a preponderance of the evidence: · First, the truth of the defense which he has pleaded against the note in suit; second, the fact that the plaintiff, G. I. Smith, purchased the note with notice of such defense, or that he made such purchase after the note became due.   And if you so find by a preponderance of the evidence that the defendant has proved and established his defense to said note, your verdict should be for the defendant.   *   *   *

"No. 5.   The court further instructs you that in order to defeat a recovery by the plaintiff it is incumbent upon the defendant, Sam Lambert, to establish by a preponderance of the evidence:   First, the truth of the defense

which he has pleaded against the note in suit; and, second, the fact that the plaintiff, G. I. Smith, purchased the note with notice of such defense, or that he made such purchase after the note became due. If both these propositions have been so established, then the plaintiff cannot recover; but, if either proposition has not been so established, then plaintiff will be entitled to your verdict for the full amount of the note in suit."

That these instructions do not correctly state the law, and were prejudicial to defendant, is obvious. Neither are they cured by instructions numbered 1 and 4, as claimed by counsel for defendant in error. In short, the objectionable instructions placed upon the defendant the burden of proving by a preponderance of the evidence, notwithstanding any fraud practiced by Vennum in the procurement of said note, that Smith purchased the note with actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the note constituted bad faith, and told the jury that unless defendant established these facts by a preponderance of the evidence, they should find for the plaintiff. Plaintiff claimed to be a holder of the note in due course of trade. By section 4102, Rev. Laws 1910, a holder in due course is defined as follows:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"First. That it is complete and regular upon its face.

"Second. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact.

"Third. That he took it in good faith and for value.

"Fourth. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

By section 4105 it is provided that:

"The title of a person who negotiates an instrument is defective within the meaning of this chapter when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to fraud."

While section 4106 provides:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

We have carefully read the entire record, and find abundant evidence to justify the conclusion that the note was fraudulently obtained from Lambert by the payee, Vennum, and his confederate, Ceideburg. "The evidence tending to show that the note was originally obtained by Vennum through fraud was by no means clear, decided, and satisfactory," say counsel for defendant in error in their very excellent brief, thereby admitting there was evidence of fraud in the inception of the note, and denying only its probative value. The facts in respect to the giving of the $1,000 note, however, are uncontradicted. That Lambert was induced to give the note by fraud practiced upon him by the payee thereof and those acting in conjunction with him cannot be seriously questioned. Section 4109, Rev. Laws 1910, provides:

"Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. But the last mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title."

The argument that the instructions complained of constitute error is met, in the brief of defendant in error, by this statement:

"So it seems that the court, with admirable impartiality, placed upon the plaintiff the burden of proving that he was the holder in due course as often as he did upon the defendant that of proving his defense."

—and the claim that, there being no evidence of bad faith, the giving of said instructions did not constitute reversible error. There being evidence of fraud in the procurement of the note, under the statute the burden was upon the plaintiff, and not upon the defendant, to prove that he acquired title to the note in due course, which, as we have seen, includes proof that it was taken in good faith, and that at the time the purchaser had no knowledge of any infirmity in the instrument or defect in Vennum's title. While the authorities uphold with much unanimity the rule that neither negligence nor knowledge of suspicious circumstances nor failure to make inquiries will in or of itself amount to bad faith in a holder of negotiable paper who purchases it for value before maturity, yet they are equally consistent in holding that the existence of such facts may be evidence of bad faith sufficient to take the question to the jury; and especially is this so where the burden of proof is upon

the holder to establish the innocent character of his pur-
chase. *Arnd v. Aylesworth*, 145 Iowa, 185, 123 · N. W.
1000, 29 L. R. A. (N. S.) 638; *Kellogg v. Curtis*, 69 Me.
212, 31 Am. Rep. 273; *Canapoharie Nat. Bank v. Die-
fendorf*, 123 N. Y. 191, 25 N. E. 402, 10 L. R. A. 676;
*Murray v. Lardner*, 2 Wall. 110, 17 L. Ed. 857; *Good-
man v. Harvey*, 4 Ad. & El. 870. Although suspicious
circumstances are not notice as a matter of law, yet
the jury may find them to be so as a matter of fact, and
evidence going to show the existence of such grounds for
suspicion is always admissible.

That the owner of a negotiable note who obtains
it before maturity for a valuable consideration, without
knowledge of any defect of title, and in good faith, holds
it by title valid against the world, is firmly established in
this jurisdiction. *McPherson v. Tittle*, 36 Okla. 510,
120 Pac. 721, 44 L. R. A. (N. S.) 396; *Citizens' Sav.
Bank v. Landis*, 37 Okla. 530, 132 Pac. 1101; *First State
Bank v. Tobin*, 39 Okla. 96, 134 Pac. 395; *Security Trust
& Sav. Bank v. Gleichman*, 50 Okla. 441, 150 Pac.
908, L. R. A. 1915F, 1203. Also that suspicion of
defects of title, or knowledge of circumstances which
would excite such suspicion in the mind of a pru-
dent man, or of circumstances sufficient to put him upon
inquiry, will not defeat his title; that result can be pro-
duced only by bad faith on his part. *Forbes v. First Nat.
Bank*, 21 Okla. 206, 95 Pac. 785; *First Nat. Bank v.
Wade*, 27 Okla. 102, 111 Pac. 205, 35 L. R. A. (N. S.)
775; *City State Bank v. Pickard*, 35 Okla. 243, 129 Pac.
38. But it is unnecessary for us to say whether from
the proven facts there was evidence of bad faith suf-
ficient to take the case to the jury, as we shall presently
see. Some time before Smith secured the Lambert note

he had loaned Vennum $300, and Ceideburg $600. Afterwards an additional loan of $175 was made to Ceideburg, who gave plaintiff his note for $1,075, which included the amount due Smith from Vennum. To secure this note, which matured February 4, 1912, Ceideburg gave Smith a mortgage on a race horse named Blanco Boy. This note and mortgage Smith started to leave with the People's State Bank of Medicine Lodge, but was told by some one there that he had better see a lawyer with reference to it. Smith then went to the office of Mr. Tincher, and placed the Ceideburg note in his hands for collection. Mr. Tincher placed the mortgage of record, looked after the security, and advised Vennum that he had the note for collection. In the course of time Vennum, who was anxious to get possession of Blanco Boy for racing purposes, called to see Mr. Tincher; Mr. Smith being present on the occasion. In the transaction Mr. Tincher represented Smith as his attorney. At the conference the following transpired: Smith assigned over to Vennum both the Ceideburg note and mortgage, and Vennum indorsed to Smith the Lambert note for $1,000, and agreed to pay Smith the amount due him over and above $1,000 in cash. At the trial Smith testified positively that at the time of taking the Lambert note he had no knowledge of the circumstances under which it was given, and hence of the fraud practiced upon Lambert. Smith's testimony, standing alone, refutes a personal knowledge on his part of the infirmity in the note.

As he was represented in the transaction by his attorney, Mr. Tincher, we must look, then, to ascertain what knowledge, if any, of the transactions between Vennum and Lambert his attorney had. On cross-examination the

following questions were asked and answered by Mr. Tincher while on the witness stand:

"Q. You took a purely legal attitude, and that was that you had a right to look at the note and did not make and further inquiry at all? A. Yes; I did. Q. What was the inquiry you made? A. I made the inquiry as to whether or not Mr. Lambert was financially responsible; I made that inquiry. Q. You only made the inquiry as to whether or not Mr. Lambert was good for the amount of the note or not? You didn't investigate to ascertain as to whether or not there was any consideration for the note, or whether or not he would pay it? You depended upon the face of the note? A. Vennum told me what the note was given for. Q. You knew that you could not believe a word that Vennum might tell you, didn't you? A. No, sir; I didn't. Q. You didn't know that you could not believe what Vennum might say about it? A. No, sir. I thought that, if anybody could tell me what the Lambert note was given to him for, Vennum could. Q. You knew he had lied to somebody else, because you had defended him in a criminal case and criminal prosecutions all over the country? A. No."

Thus it appears that Vennum told Tincher what the note was given for, and that Tincher believed Vennum's statement, knowing that Vennum knew the facts. Notice to Tincher was notice to Smith, his client. The notice he received was contemporaneous with the consummation of the transaction. Generally speaking, it may be said that, for the purpose of charging a holder with knowledge, notice to an agent is notice to his principal, and that the principal is bound and affected by such knowledge or notice as his agent obtains while acting within the scope of his agency. *Brothers v. Bank of Kaukauna,* 84 Wis. 381, 54 N. W. 786, 36 Am. St. Rep. 932; *Kauffman v. Robey,* 60 Tex. 308, 48 Am. Rep. 264; *Dickson v. Kittson,*

75 Minn. 168, 77 N. W. 820, 74 Am. St. Rep. 447; *Iowa Nat. Bank of Ottumwa v. Sherman,* 19 S. D. 238, 103 N. W. 19, 117 Am. St. Rep. 941; 3 R. C. L. 1069. The Supreme Court of Wisconsin, in the case first cited, of the rule making notice to the agent notice to the principal, said:

"Notice to an agent is notice to his principal, and it is conceded that the principal is bound and affected by such knowledge or notice as his agent obtains in negotiating or attending to the particular transaction. But, if the agent acquires his information so recently as to make it incredible that he should have forgotten it, his principal will be bound, although not acquired while transacting the business of the principal."

Evidence of fraud in the procurement of the note from Lambert having been introduced, the burden then shifted to the plaintiff to show that he acquired the note without knowledge of any infirmity therein and in good faith, as was held in *Winfield Nat. Bank v. McWilliams,* 9 Okla. 493, 60 Pac. 229; *Forbes v. First Nat. Bank,* 21 Okla. 206, 95 Pac. 785. The rule announced in *First Nat. Bank of Stratford v. Walker,* 39 Okla. 620, 136 Pac. 408, 50 L. R. A. (N. S.) 1115, that:

"In an action on a note by a transferee thereof, defendant cannot introduce evidence as to fraud and failure of consideration until he first substantiates his allegation challenging plaintiff's claim of a *bona fide* purchase for value before maturity"

—is in conflict with the earlier cases cited, and with the weight of authority. The same is therefore disapproved.

The foregoing rule, however, does not govern where, as in the proviso to section 4109 of the statute, the party became bound on the instrument prior to the acquisition

of the defective title. But we have already seen that in the present case there was evidence of fraud in the procurement of the note by Vennum; hence the exception in the statute is not brought into action, but, instead, the general rule placing the burden of proof upon the holder governs.

This error of the court in placing the burden of proof upon the defendant in plain violation of the statute was prejudicial and constituted reversible error. Fraud having attached in the inception of the note, and being shown in evidence, it then rested upon the plaintiff to meet that issue. Heeding the instruction given, this was unnecessary. On the other hand, the instruction imposed upon the defendant the additional duty of proving a fact not necessary in his defense, and relieved the plaintiff of making proof of a fact necessary to a recovery. Thus the purpose of the statute was circumvented, and it is no sufficient answer to say that the giving of the instruction, even though erroneous, was without prejudice. We cannot say what influence the instruction had upon the jury in the consideration of the case. There was evidence from which a verdict for the defendant could have been returned more readily, it seems, than for the plaintiff.

The evidence of knowledge of the holder was not made out as a part of plaintiff's case, but was drawn out on cross-examination of his witness by defendant. That this evidence was favorable to the defendant upon a material fact in issue did not have the effect of relieving plaintiff of the "laboring oar." To hold otherwise would be to make the question of the burden of proof depend, not on the statute or upon the rules of law, but upon favorable evidence drawn out on cross-examination of a witness.

The judgment of the trial court is reversed, and the cause remanded.

All the Justices concur, except THACKER, J., not participating.