### VORIS v. BIRDSALL et al.

No. 5277—Opinion Filed Jan. 23, 1917.

(162 Pac. 951.)

**1. Alteration of Instruments—Materiality—Effect.**

Where, after the execution of three promissory notes in payment of a stallion, the notes are left with two of the makers for delivery to the payee, and before or at the time of the delivery such notes are materially altered without the knowledge or consent of the other makers, by indorsing a fictitious credit of $350 thereon, in pursuance of a secret agreement between the two makers and the payee, such alteration will avoid the notes as to the makers not participating in the alteration.

**2. Same.**

The test as to whether the alteration of a note is material depends, not upon whether it increases or reduces the makers' liability, but upon whether the note will have the same operation and effect after the alteration as it had before.

**3. Bills and Notes—Bona Fide Holders——Defenses—Alteration.**

Prior to the adoption of sections 4174, 4175, Rev. Laws 1910, a material alteration of a note, without the consent of the makers, avoids it as against the makers not consenting to the alteration even in the hands of a bona fide holder without notice of such alteration.

**4. Bills and Notes—Statutory Provisions—Applicability.**

The provisions of the Negotiable Instruments Act of June 11, 1909, do not apply to negotiable instruments made and delivered prior to the adoption of that act.

**5. Bills and Notes—Actions—Burden of Proof.**

The rule placing the burden of proof on the holder of a negotiable instrument to show that he is a holder in due course obtains where there is fraud in the inception of the note.

**6. Bills and Notes—Bona Fide Purchasers—Defects in Title.**

Suspicion of defect of title, or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or of circumstances sufficient to put him upon inquiry, will not defeat the title of an otherwise innocent holder of a negotiable promissory note for value before maturity, such note having been executed prior to the enactment of the present Negotiable Instruments Law (chapter 49, Rev. Laws 1910); but such result can be produced only by bad faith on his part.

(Syllabus by Johnson, C.)

Error from District Court, Beaver County; R. H. Loofbourrow, Judge.

Action by E. C. Voris against Charles N. Birdsall and others. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

Former opinion, published in 153 Pac. 673, withdrawn.

Grant Stanley, for plaintiff in error.

Dickson, Rush & Dickson, for defendants in error.

Opinion by JOHNSON, C. This case is upon rehearing. Upon the former hearing of the cause in this court an opinion was written and filed herein upon June 27, 1916, by Mr. Commissioner Rittenhouse, which, in part, was as follows:

"On December 11, 1907, the defendants made, executed, and delivered their three promissory notes to R. F. Dygert which were indorsed by him, and subsequently indorsed by L. W. Cochran. This action was brought by E. C. Voris, who claims to be the owner and holder thereof in due course. It is contended by the defendants that these notes, amounting to $2,100; were given in payment of a certain stallion; that in order to effect the sale of said animal to these defendants the said R. F. Dygert entered into a secret agreement with the defendants Charles N. Birdsall and Hugh Hardie whereby it was agreed that if they would join the other defendants as joint purchasers of said stallion, jointly executing with them the notes in controversy, and thereby inducing the other defendants to sign the same, he would, prior to the delivery of the notes, secretly and without the knowledge of the other defendants herein, indorse upon each of said notes a credit of $100 as having been paid by the defendant Charles N. Birdsall, and upon the note falling due September 1, 1911, a credit of $50 as having been paid by Hugh Hardie. In pursuance of this agreement, said defendants executed the notes in controversy, and before or at the time of the delivery of said notes R. F. Dygert did enter the credits agreed upon without the knowledge or consent of the other defendants.

"The question now before this court is: 'Does the indorsement of the fictitious credits before or at the time of delivery to the payee constitute a material alteration of the notes?' We think it does. R. F. Dygert entered into a secret agreement with two of the makers of these notes whereby it was agreed that the notes should evidence a consideration of $2,100, while, in fact, the actual consideration would be $1,750. This was not the amount the defendants agreed to pay for the stallion and for which they executed their notes, and to the extent of the credits, which amounted to $350, which was indorsed prior to or at the time of the delivery of the notes to the payee, the notes were altered without the knowledge or consent of the makers except the two mentioned. There can be no doubt that, when the payee and the two defendants who were parties to this secret agreement indorsed the pretended payments of $350 on the notes before or at the time of the delivery thereof to the payee, their acts constituted a material alteration of the amount of the notes, to the same extent as if the indorsement had appeared as an interlineation on the face of the notes. In construing the operation and effect of an instrument such as the one under consideration in this case it is necessary to take into consideration, not only the face of the paper, but any indorsements thereon. As has been said by Daniel on Negotiable Instruments (6th Ed.) sec. 151: 'It seems that the purport of the instrument is not only to be collected from the "four corners," but from the "eight corners," a memorandum on the back affecting its operation being regarded the same as if written on its face. * * *' In Johnston, Receiver, v. May et al., 76 Ind. 293, the court, discussing a similar indorsement to the one under consideration, says: 'We need not argue for the purpose of showing that such an alteration of the note was a material alteration for that is manifest; and the facts found by the court show that this alteration was made in the absence and without the authority of the appellee, and without his knowledge or consent, by the principal in the note and the payee thereof or one of them, before or at the time of its delivery. Under the decisions of this court, such an alteration will vitiate and avoid the note, and prevent a recovery thereon from the appellee.' Portage County Branch Bank v. Gustavus Lane, 8 Ohio St. 405; Polo Mfg. Co. v. Parr et al., 8 Neb. 379, 1 N. W. 312, 30 Am. Rep. 830.

"It is immaterial that the effect of the alteration was to reduce the amount of the makers' liability. The test as to whether the alteration of a note is material depends, not upon whether it increases or reduces the makers' liability, but upon whether the note will have the same operation and effect after the alteration as it had before. Commonwealth National Bank v. Baughman, 27 Okla. 175, 111 Pac. 332; Citizens' State Bank v. Grant, 52 Okla. 256, 152 Pac. 1082; German American Bank v. Hennis et al., 54 Okla. 146, 153 Pac. 671.

"The next inquiry is: 'What effect does a material alteration have upon notes subsequently coming into the hands of a bona fide holder without notice?' This is thoroughly discussed in Commonwealth National Bank v. Baughman, supra, Citizens' State Bank v. Grant, supra, and German American Bank v. Hennis et al., supra, wherein it was held that prior to the adoption of sections 4174, 4175, Rev. Laws 1910, the material alteration of a note by the payee without the consent of the maker avoids it against the maker even in the hands of a holder without notice of such alteration.

"The answer further alleges that the agent of Lew W. Cochran, in order to induce the defendants to purchase the stallion, falsely and fraudulently represented the horse to be a Percheron stallion, foaled April 18, 1904, named Lovalette, with a pedigree of record with the Percheron Society of America, showing his full pedigree for four generations, and numbered 46983; that the said stallion was

sound and a sure foal-getter, insured for $1,000 in a solvent live stock insurance company. There was evidence supporting the theory that the horse delivered was not the one described in the pedigree. At the time of the execution of those notes section 4109, Rev. Laws 1910, was not in force. This section is but declaratory of the law as it existed prior to its adoption. In the case of the First National Bank of Stratford v. Walker, 39 Okla. 620, 136 Pac. 408, 50 L. R. A. (N. S.) 115, this court, in dealing with a note made prior to the present law, held: 'In an action on a note by a transferee thereof, defendant cannot introduce evidence as to fraud and failure of consideration until he first substantiates his allegation challenging plaintiff's claim of a bona fide purchase for value before maturity.'

"This theory was disapproved in the case of Sam C. Lambert v. G. S. Smith, 53 Okla. 606, 157 Pac. 909, wherein it was held that, where fraud is shown in the inception of the note, the true rule places the burden on the plaintiff to establish that he is a holder in due course without notice. Winfield National Bank v. McWilliams, 9 Okla. 493, 60 Pac. 229; Abmeyer v. First National Bank of Horton, 76 Kan. 877, 92 Pac. 1109. 'Since there was evidence tending to show fraud in the inception of the note, the burden was upon the bank to show that it acquired the note bona fide for value in the usual course of business, and under circumstances which created no presumption that facts impeaching its validity were brought to the notice of the bank or its managers. Kennedy v. Gibson, 68 Kan. 612, 75 Pac. 1044. This rule of law placing the burden upon the holder of paper fraudulently obtained appears to have been overlooked; as the court directed a verdict upon the theory that there was an absence of proof that Dunn or the bank had notice * * * in the inception of the note. To meet the prima facie case arising from proof of fraud testimony was offered of the good faith of the bank and that it had no notice of any fraud on the part of Wright, but whether the prima facie cause was overcome was a question for the jury, and hence the ruling directing a verdict was error.' In Kirby v. Berguin, 15 S. D. 444, 90 N. W. 856, the court in the syllabus says: 'Where a negotiable instrument is shown to have been obtained by fraud or duress, the burden is on a subsequent holder to show that he was a bona fide purchaser 'for value, without notice.'

"Ireland v. Shore, 91 Kan. 326, 137 Pac. 926, was a cause in which fraud in obtaining the instrument was alleged in the answer. The court instructed the jury that the possession of a negotiable instrument properly indorsed is a prima facie evidence that the holder is a holder in due course, and that, when the title of the person negotiating such an instrument is shown to be defective, the burden is on the holder to prove that he is a holder in due course. In the case of Gourley v. Pioneer

Loan Co., 51 Okla. 434, 151 Pac. 1072, it is said: 'Where the maker of a note establishes that the note had been diverted or negotiated in violation of an agreement under which it was given, the burden is on the holder to prove that he, or some one under whom he claims, acquired title to the note as a holder in due course, and without notice of any infirmity; and, unless he proves this to the satisfaction of the court or jury, he is not entitled to recover against the maker.'

"After the defendants had established fraud in the inception of the notes, and other facts tending to impeach the plaintiff's claim that he was a holder in good faith, the plaintiff, in order to overcome such prima facie case, testified: 'I had no notice of any defense on the part of the maker or either of them, and was a holder of the note before it became due. It was indorsed by Mr. Cochran at the time it was delivered to me. I know nothing about the animal described by the defense in their answer prior to getting the note.' The extent of the interest of the witness in the controversy was before the jury, they were under no obligation to believe the statement that he was a holder in due course without notice of the fraud, and whether such evidence overcame the prima facie case established by the defendants was a question of fact properly submitted to them.

"We therefore conclude: (1) That the notes under consideration were materially altered by the act of the payee and the defendants Birdsall and Hardie, which alterations were made before or at the time of the delivery of the notes to the payee without the consent of the makers, C. N. Smith, F. B. Golding, J. A. Yates, B. B. Brown, and E. C. Murray, that said notes are now void as to them in the hands of a bona fide holder without notice of such alteration; (2) that the rule placing the burden of proof on the holder of a negotiable instrument to show that he is a holder for value without notice obtains where there is fraud in the inception of the note."

That part of the opinion of Mr. Commissioner Rittenhouse which is above quoted is, under the circumstances of the case, approved and adopted as the opinion of the court upon the questions therein considered.

We are confronted with a more serious question in the assignments of error dealing with the instructions and refusal of instructions with reference to the essentials of notice to the purchaser of a negotiable instrument. The lower court instructed the jury as follows:

"No. 4. You are instructed that notice is either actual or constructive. Actual notice consists in express information of a fact. Constructive notice is notice imputed by the law to a person not having actual notice. Every person who has actual notice of circumstances sufficient to put a prudent man

upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself."

While this instruction followed the general rule as to the effect of notice, as laid down by our statute, and as pertains to other kinds of contracts, this is not the proper rule governing notice of defects of title in negotiable instruments as announced by a long line of decisions by this court. The instruction given has been expressly disapproved by this court. In the case of Security Trust & Savings Bank v. Gleichmann, 50 Okla. 441, 150 Pac. 908, L. R. A. 1915F, 1203, this court said:

"The next assignment of error relates to the notice which the bank would have from the fact that the president of the bank was also a director of the Hart-Parr Company. There is error in this instruction in another particular, because the court charged that, if the bank had such notice of the transaction between the defendant in error and the Hart-Parr Company as would put a reasonably prudent man upon inquiry as to the facts surrounding the transaction, this would be notice to the bank. This, we think, is directly opposed to the decisions of this court. In Forbes v. First National Bank of Enid, 21 Okla. 206, 95 Pac. 785, it is held that knowledge of such facts as would put a prudent man upon inquiry with reference to a draft or negotiable instrument purchased by him is not sufficient to defeat the right of the holder, and the court may direct a verdict when the circumstances surrounding the transaction are not sufficiently strong for it to be said, as a matter of law, that bad faith may be inferred. In First National Bank of Watonga v. Wade, 27 Okla. 102, 111 Pac. 205, 35 L. R. A. (N. S.) 775, in passing on this same question, this court has said: 'This court is committed to the doctrine that bad faith, not merely notice of circumstances sufficient to put a prudent man on inquiry, is necessary to defeat recovery by the holder of negotiable paper whose right accrued before maturity.'"

In the case of Citizens' Savings Bank v. Landis et al., 37 Okla. 530, 132 Pac. 1101, the syllabus reads as follows:

"Suspicion of defect of title, or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or of circumstances sufficient to put him upon inquiry, will not defeat his title; that result can be produced only by bad faith on his part.

"The owner of a negotiable promissory note, who obtains it before maturity for a valuable consideration, without knowledge of any defect of title and in good faith, holds it by a title valid against all the world."

In the case of Forbes v. First Nat. Bank of Enid, 21 Okla. 206, 95 Pac. 785, this court said:

"There was no proof that plaintiff had actual notice of fraud practiced upon Forbes by the Citizens' Bank in acquiring said draft. The fact that the president of the First National Bank may have had knowledge that the Citizens' Bank was in a failing condition does not prove notice to it of the fraud of the Citizens' Bank in procuring the draft in question from Forbes. Plaintiff, by showing that it was a purchaser for value before maturity of said draft, established its right to recover thereon, unless such right be defeated by proof of notice of the equities of Forbes or of its bad faith. In Atlas National Bank v. Holm et al., 71 Fed. 489, 19 C. C. A. 94, the United States Circuit Court of Appeals of the Seventh Circuit said: 'There has been a contrariety of rulings on the subject, but the weight of authority has long been (in the federal courts, certainly since Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865) that one who takes an assignment of commercial paper before maturity, paying value, without notice of infirmity in the title or consideration, is deemed a good-faith purchaser, and that, to deprive him of that character, it is not enough that he neglected to make the inquiry which under the circumstances a prudent man would or ought to have made.' It is contended by plaintiff in error that the conduct of Goltry in going to the Citizens' Bank after banking hours and obtaining the draft in question, and the other items of remittance which had been received by the Citizens' Bank during that day and the government bond and a note in settlement of the balance due by the Citizens' Bank to the First National Bank when Goltry had knowledge that the Citizens' Bank was in a failing condition, and that it had acquired said draft on that day, establishes the bad faith of the plaintiff in taking the draft. He contends that the circumstances under which the draft was obtained were such as should have created a suspicion in the mind of Goltry, and put him upon inquiry, and that his not having made inquiry of the assistant cashier of the Citizens' Bank as to how he obtained the draft establishes the bad faith of the plaintiff. We think this contention not well founded, for it has become the well-established rule in the federal courts of the Union and in the greater number of state courts that suspicion of defect of title or even gross negligence on the part of a taker of a negotiable instrument will not defeat his title. Atlas National Bank v. Holm et al., supra; Murray 1. Lardner 2. Wall. 110, 17 L. Ed. 857; Hotchkiss v. National Banks, 21 Wall. 354, 22 L. Ed. 645; Clark v. Evans et al., 66 Fed. 263, 13 C. C. A. 433; Goodman v. Simonds, 20 How. 343, 15 L. Ed. 934; 1 Daniel on Negotiable Instruments, 766.'"

The rule announced in the above cases has been approved by this court in a long line of

decisions, others of which are McPherrin v. Tittle et al., 36 Okla. 510, 129 Pac. 721, 44 L. R A. (N. S.) 395, and First State Bank of Oklahoma City v. Tobin, 39 Okla. 96, 134 Pac 395. These cases announce the rule, which existed prior to the present Negotiable Instruments Act, enacted in 1909.

Plaintiff in error requested instructions embodying the correct rule as drawn from the above cases herein cited and quoted, and these instructions were refused, and exceptions taken. Following the above authorities, it is apparent that the lower court erred in its instructions and that the effect of this error was prejudicial to plaintiff in error.

The judgment of the lower court should be reversed, and the cause remanded for further proceedings.

By the Court: It is so ordered.