## MANGOLD & GLANDT BANK v. UTTERBACK.

No. 9412—Opinion Filed July 30, 1918.

(174 Pac. 542.)

**1. Fraud—Circumstantial Evidence.**

Circumstantial evidence to show fraud is oftentimes admissible as a whole, although some of the circumstances considered separately would be incompetent. The whole transaction involving the alleged fraud may be given in evidence.

**2. Corporations—Action on Notes for Stock —Fraud—Evidence.**

The record in this case examined, and it is held that the action of the trial court in permitting the introduction of circulars and other literature forwarded by the corporation to its stockholders and prospective patrons, in which the stock involved in this action was issued, where the same was signed by the president of the plaintiff in error as a director of said corporation, were competent evidence, and the trial court committed no error in allowing the same to be introduced.

**3. Appeal and Error—Bills and Notes— Trial—Action on Notes—Instructions.**

The instructions of the court examined. and the same were more favorable to the plaintiff in error than it was entitled to receive, and the instructions offered were properly refused.

(Syllabus by Hooker, C.)

Error from District Court, Caddo County; Cham Jones, Judge.

Suit by the Mangold & Glandt Bank against W. T. Utterback. Judgment for defendant, and plaintiff brings error. Affirmed.

See, also, 54 Okla. 655, 160 Pac. 713, L. R. A. 1917B, 364.

Randall U. Livesay, for plaintiff in error. A. J. Morris, for defendant in error.

Opinion by HOOKER, C. The facts here are as follows: The plaintiff in error is a banking institution organized under the laws of the state of Nebraska, and has been engaged as such for 10 years or more prior to the institution of this suit. About September 1, 1911, the Denver-Laramie Realty Company and the Colorado-Wyoming Coal Company, which were subsidiary corporations to the Northwestern Land & Iron Company, sold, delivered, and indorsed four certain promissory notes to the bank, and in order to secure the payment of the aforesaid notes said companies deposited as collateral security the two notes involved here, which had been executed on August 14, 1911, by the defendant in error, and which were due on December 14, 1911, to the Northwestern Land & Iron Company, and which had been indorsed by said company to its subsidiary corporations. Suit was filed alleging these facts, nonpayment of the notes and assignment before maturity without notice, etc., and Utterback answered, denying the material allegations of the petition, and especially denied the ownership of the notes sued upon, and denied that the bank acquired the same before maturity for a valuable consideration, in due course and without notice, and alleged the fact to be that, whatever interest the bank had in said notes, the same was taken with knowledge of the defense set up in said answer.

Utterback further admitted the execution of the notes, but alleged that the only consideration therefor was the promise of the Denver-Laramie Realty Company, the Colorado-Wyoming Coal Company, and the Northwestern Land & Iron Company, which were companion companies, to issue and deliver to him certain shares or certificates of stock in said companies. and that the same had been procured from him by reason of false representations which he had relied upon, and, relying thereupon, had executed said notes and delivered the same to said companies; that said representations were fraudulent and false, made for the purpose of deceiving him, and did deceive him and that by reason thereof said notes were void, and further alleged that the bank purchased the same with full knowledge of the facts, and was not an innocent purchaser, and held the notes subject to any defense which he had as against the original payee therein named.

Upon the trial of the cause the plaintiff introduced the notes and the testimony of the officers of the bank, seeking to establish that the bank had purchased the notes for

a valuable consideration in due course of business and without notice of any equities whatever. But it is disclosed by the evidence that the president of the bank, claiming to have purchased these notes for a valuable consideration before maturity and without notice of the equities, was a director and officer of these corporations, and as such officer and director of said corporations he had signed many circulars and letters containing representations as to the financial condition of the companies and the value of their stock, which was subsequently ascertained to be untrue, and that these circulars and letters were forwarded to the stockholders and to prospective purchasers of stock in order to aid and encourage the promotion and conduct of the business.

The defendant testified that he received these communications, relied upon them, and purchased his stock believing the same to be true, when as a matter of fact these representations were false, and were fraudulently made for the purpose of inducing him and others to buy stock in said corporations.

Judgment was rendered in favor of the defendant below, and the plaintiff in error has appealed here, urging that the trial court committed an error in admitting certain evidence on the part of the defendant over the objections of the plaintiff, and also committed error in refusing to give certain instructions requested by the defendant below.

No effort is made by the plaintiff in error to comply with the rules of the court requiring the party complaining of the admission or rejection of evidence to set out the full substance thereof, but notwithstanding that we have examined the record, and are of the opinion that the trial court did not commit any error in allowing this evidence to be introduced, of which the plaintiff in error complains.

The evidence introduced, as stated above, consisted of circulars and other literature sent out by the companies to their stockholders and to prospective purchasers of stock, purporting to detail the financial condition of the companies and the wonderful opportunity afforded to investors to reap rich returns upon money invested in the stock of said companies. The evidence discloses that the president of the bank was a director in these companies, and had personally signed, as such officer and director of the companies, most, if not all, of these circulars and other literature, and that the same had been distributed broadcast

throughout the country with his knowledge and consent. And the evidence further shows that the notes in question were purchased by the cashier of the bank with his knowledge and consent from the company thus distributing said circulars to its stockholders.

It is reasonably established by the evidence that the papers introduced were what they purported to be, and therefore no error was committed in submitting the same to the jury. The circulars distributed after the execution of the notes were competent as a part of the system or scheme devised by the companies to defraud their stockholders. In addition thereto the circulars were corroborative of the statements made to the defendant in error in person by the officers and agents of the company.

The plaintiff in error requested the court to give the following instruction:

"You are instructed that receiving a negotiable note as collateral security for an existing debt is receiving it for a valuable consideration, and under the law of the state the holder may enforce payment to the extent of his interest."

The statement of law in the instruction is corrected by the instruction as applicable to the facts in this case, but does not extend far enough to justify the court in giving the same here, for under the instruction offered, one who takes such a note as collateral security may enforce it regardless of his knowledge of the equities at the time he takes it. There was no error in refusing this instruction.

Instruction No. 4, requested, is as follows:

"The jury is instructed that when the holder of a negotiable instrument proves by competent testimony that he acquired the instrument bona fide for value, in the usual course of business, before due and under circumstances which do not operate as constructive notice of facts which impeach the original validity, the defendant must then prove that the plaintiff had actual notice of such facts; otherwise your verdict should be for the plaintiff."

This instruction is not the law in the jurisdiction. This court in a number of cases has said that where the defense to a note is that the same was obtained by the fraud of the payee, and when this fraud is established, the burden rests upon the plaintiff to show that it purchased the note in question without notice of the fraud, or, in other words, the title of the payee in the notes being defective, the burden to show want of notice, if fraud is established, is up-

on the plaintiff, citing Voris v. Birdsall, 62 Okla. 286, 162 Pac. 951; Cox v. Kirkwood, 59 Okla. 183, 158 Pac. 930. But the trial court here placed the burden of proof upon the defendant to show that the bank took the notes with knowledge of the fraud practiced upon it, and the plaintiff in error was not prejudiced by the refusal of the court to give said instruction.

Instruction No. 5, requested by the plaintiff in error, was substantially given by the court.

Instruction No. 6, requested, is as follows:

"The jury is instructed that under the negotiable instrument statute in force in this state mere suspicion of defect of title, or knowledge of circumstances which would excite suspicion in the mind of a prudent man, or even gross negligence on the part of the taker of the instrument at the time of the transfer, will not defeat his title. And in this connection the jury is instructed that it is not the duty of a party about to purchase negotiable paper to make any inquiries not required by good faith, as to possible defenses of which he has no notice, either from the face of the paper, or facts communicated at the time."

This court in Lambert v. Smith, 53 Okla. 606, 157 Pac. 909, said:

"While the authorities uphold with much unanimity the rule that neither negligence nor knowledge of suspicious circumstances nor failure to make inquiries will in or of itself amount to bad faith in a holder of negotiable paper who purchases it for value before maturity, yet they are equally consistent in holding that the existence of such facts may be evidence of bad faith sufficient to take the question to the jury; and especially is this so where the burden of proof is upon the holder to establish the innocent character of his purchase. * * * Although suspicious circumstances are not notice as a matter of law, yet the jury may find them to be so as a matter of fact, and evidence going to show the existence of such grounds for suspicion is always admissible."

The requested instruction takes away from the jury the right to say whether any suspicious facts and circumstances, although the holder may be guilty of gross negligence, amounts to bad faith, and was therefore properly refused. The court, however, did tell the jury and plaintiff must have knowledge of the fraud in order to entitle the defendant to succeed.

Instructions Nos. 9 and 10 have no application to the facts here.

Instruction No. 11 is fully covered by the instructions given.

Instruction No. 13, tendered, was objectionable for the reason that one cannot make a false statement and then be heard to say that the party to whom it was made should not have relied upon it, but should have investigated for himself. See Werline v. Aldred, 57 Okla. 391, 157 Pac. 305; Stevens v. Reilly, 56 Okla. 455, 156 Pac. 157.

There being no error in this record prejudicial to the rights of the plaintiff in error, the judgment of the lower court is affirmed.

By the Court: It is so ordered.