## HAMIL v. JOYNER.

No. 13191—Opinion Filed Oct. 14, 1924.

### 1. Bills and Notes—"Holder in Due Course."

The purchaser of a negotiable instrument, in order to be a holder in due course, must come within the requirements of section 7722, Comp. Stat. 1921, defining such holder.

### 2. Same—Defective Title—Burden of Proof.

When it is shown that the title of any person who has negotiated a negotiable instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course, except as otherwise provided in section 7729, Comp. Stat. 1921.

### 3. Appeal and Error—Refusal to Direct Verdict—Review.

On appeal assigning error in refusing to direct a verdict, the question, admitting the truth of the evidence complained of, together with all reasonable inferences and conclusions, and eliminating from consideration all conflicting evidence and opposing inferences, is whether there is any competent evidence reasonably tending to support the verdict of the jury, and if there is such evidence, the request must be denied.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3

Error from District Court, Grant County; J. W. Bird, Judge.

Action by Gustav Hamil on promissory note against L. I. Joyner. Judgment for defendant, and plaintiff appeals. Affirmed.

T. A. Noftzger and J. B. Drenan, for plaintiff in error.

Sam P. Riding, for defendant in error.

Opinion by THREADGILL, C. The parties were plaintiff and defendant in the trial court as they appear here, and, for convenience. will be so referred to in this opinion. Plaintiff brought his action against the defendant upon a promissory note of $1,000, executed by defendant to E. L. Herren and G. G. Davidson and by them indorsed. The note is dated March 1, 1920, and made payable six months after date, with eight per cent. interest from date. The petition states that said E. L. Herren and G. G. Davidson for value and before maturity indorsed said note in writing and delivered it to the plaintiff, who is the holder and owner for value. A copy of the note was attached to the petition. The defendant filed answer consisting of general denial, except specific admission. The admission being that he signed the note described. Further answering he states that he delivered the said note to E. L. Herren personally, and same was given as consideration for certain units in a royalty in an oil and gas lease which units were to be issued and delivered to him, and it was expressly agreed at the time he delivered the note to E. L. Herren that, if he did not desire to retain the said units, he could on or before maturity of the note surrender them to E. L. Herren or to the owner of the note and have the same returned to him, and that prior to the time said note was due he notified said Herren that he did not desire to retain the units and would return them and he wanted his note canceled according to their agreement, and he delivered the units to said Herren, who received them, and returned the same to the persons to whom they belonged, and the note is, therefore, of no effect, and is void and should be canceled by the court.

Defendant further pleads that the plaintiff was the owner of a part of the royalty for which the note was given, and he fully understood the agreement made with said Herren, who was agent for selling the said royalty units for the plaintiff and the other owners of the same; that the note was placed in possession of the Guaranty Title & Trust Company of Wichita, Kan.. as the trustee, holding the royalty interests which were being sold by said Herren and Davidson, and that said note was not placed in the hands

of the plaintiff till after same was due, but was in the possession of the Guaranty Title & Trust Company, and the plaintiff did not, at any time, purchase the said note for value or in any other way, and the said note is not the property of plaintiff. Plaintiff demurred to the answer which being overruled he filed reply consisting of general denial. The issues were tried to a jury on January 11, 1922, and resulted in a verdict and judgment for defendant, and plaintiff appealed by petition in error and case-made alleging five grounds for reversal as follows:

"1. That the said court erred in overruling the motion of the plaintiff in error for a new trial. 2. That the court erred in not rendering judgment for the plaintiff in error as requested by the plaintiff after the defendant who had assumed the burden of proof in this case had rested his case. 3. That the said court erred in refusing and ruling out competent and legal evidence which was offered by the plaintiff in error and excepted to by the plaintiff in error. 4. That the court erred in admitting evidence on the part of the defendant in error which was objected to and excepted to by the plaintiff in error. 5. That the court erred in his general instructions to the jury in this: That said instructions were contrary to the evidence and contrary to the law of the case."

In the trial of the case the defendant assumed the burden of proof, and the court permitted him to introduce testimony to prove where the land was located upon which the oil royalties were sold, and at the time E. L. Herren went to defendant and offered to sell him units in the royalty interest.

This testimony was to the effect that the land consisted of 160 acres and only one well was developed on the place, which had a capacity of 4 to 7 barrels a day. The royalty was one-eighth interest. A man by the name of E. S. Brodie had contracted to buy this royalty for the sum of about $15,-000, paying $5,000 cash and was to pay another $5 000 in 30 days and the balance in 30 days. He placed the royalty contract in the hands of the Guaranty Title & Trust Company of Wichita, Kans., and the party owning and selling the royalty in Cotton county, Okla., was to send the deed for the royalty with draft attached to this trust company, and. E. S. Brodie, to meet the payments as well as profit by the transaction, divided this royalty interest into 1,250 units, valuing each unit at $100, and sent Herren and Davidson out as agents to sell these units for cash, or notes due in six months. At the time Herren came to the

defendant and solicited him to purchase, defendant hesitated on the ground that the royalty was not worth the value without other wells were drilled on the place and Herren assured him that Brodie would be sure to drill several wells in a few months, and the stakes were set for two wells to be drilled in the next few weeks, or within a very short time. This was about the first of March. Defendant was a farmer, did not have the cash then, but would give his note for 10 shares due in six months, with the understanding that the note was to be delivered to Brodie when the 10 shares or units were delivered to Herren for him, and with the further understanding that, if he became dissatisfied with the units for any reason, he could turn them back and his note would be surrendered. This was the agreement on which the note was given and placed in the hands of Herren, the agent. A few days after this, about April 14, 1920, Herren made a trip to Wichita to see about getting the units for the defendant and other parties he had contracted with, and E. S. Brodie was not able to have the units issued for lack of funds to pay off the draft. About that time the plaintiff comes into the transaction. Brodie induces him to put up $10,000 in paying for the royalty interest, satisfying the draft, and releasing the bond, but before putting up this money a written contract was entered into, by which it was agreed that Herren and Davidson should act as agents in selling the 1,250 units, and were to have 30 per cent, of the par value price of all units sold for their services. The Guaranty Title & Trust Company was to hold the units in trust, and the same to be released for notes or cash paid by the purchasers. The first $20,000 cash received by the sales was to be divided among the parties interested as follows: the first $3,-000 to E. S. Brodie, the next $10,000 to Gustav Hamil (plaintiff) and the next $7,-000 to E. S. Brodie. In collecting any notes taken it was agreed as follows:

"It is further agreed between all the parties hereto that upon notes being O.K.'d by E. S. Brodie and, upon his written instructions, units may be issued by the Guaranty Title & Trust Company upon receipt of such approved notes and the second parties (Herren and Davidson) herein agree to collect the notes free of cost to the other parties concerned and due or at said time return the units which have been issued for same."

The contract was signed by E. S. Brodie as first party and G. G. Davidson and Everett L. Herren as second parties. Under these signatures, Gustav Hamil signed his name after the written statement. "the

above contract is satisfactory as far as I am concerned."

Then there was a supplemental contract providing for division of profits from the royalty or the units representing the royalty signed by Gustav Hamil and the other parties.

E. L. Herren testified at the time the contract was written he informed the plaintiff as well as Brodie of the agreement he had with defendant about developing the lease, and about returning the units and having the note returned to him.

Further testimony was introduced showing that there was no development of the lease, and no other wells were drilled, and sometime in October the Guaranty Title & Trust Company of Wichita, by letter, notified the defendant that they held the note for collection given for units of royalty sold and delivered to him, and that the same was due, and that he should pay the same at once. The defendant saw E. L. Herren and called his attention to the fact that there had been no development of the lease, according to their agreement when he gave his note for units of the royalty, and he desired to turn the units over to him according to their agreement, to be delivered to the said trust company, that he might have his note surrendered and returned to him. E. L. Herren took the units and sent the same to the title and trust company, but the note was not returned to the defendant, but instead the plaintiff brought suit against him to collect it.

1. The plaintiff contends that all of the evidence of the agreement between defendant and Herren at the time the note was given and the condition of the lease and the failure to develop the same was erroneous and should have been ruled out by the court. We cannot agree with this contention.

If the jury believed the plaintiff was the owner of the note and took it in part payment for the money he advanced as a loan or as a partner with Brodie in the adventure—it would make no difference which—they were warranted in believing that he took it with notice of the agreement with Herren. Herren's testimony on this point that he explained the agreement about returning the units and releasing the note is corroborated by the written agreement which plaintiff signed as satisfactory to him, in which it was stated that Davidson and Herren should collect the notes free of cost to the other parties concerned, when due, or at said time return the units which had been issued for same. The jury had a right to consider this testimony in connection

with the testimony of Herren that he informed plaintiff of the agreement, in determining whether or not plaintiff had notitce of the conditions upon which the note was given. It is true the evidence as to the agreement between defendant and Herren was given before it was shown that the agreement was explained to the plaintiff, but where the evidence is given by the defendant out of the presence of plaintiff affecting the subject-matter of the action, and it is thereafter shown that the facts related, in such testimony were made known to the plaintiff and before he took part in the transaction to his detriment, he cannot say he is injured by such testimony. It would have been better form for the witness to have stated the agreement he had with the defendant by relating the conversation he had with the plaintiff at the time the contracts were drawn and the note discussed in the office in Wichita, Kan., but since he was permitted to tell the agreement with defendant first and then further testified that he informed plaintiff of it afterward and before delivering the note, the error, if any, is harmless.

We have examined the evidence very carefully and we think it is sufficient to sustain defendant's contention that the plaintiff had notice of the infirmity in the note or defect in the title of the person negotiating it before it passed into his hands. Section 7722, Comp. Stat. 1921, Lambert v. Smith, 53 Okla. 606, 157 Pac. 909.

2. After defendant introduced his evidence showing the title of the note to be defective, then the burden shifted to the plaintiff to prove that he or the person under whom he claimed acquired the title as holder in due course, except as otherwise provided in section 7729, Comp. Stat. 1921, and plaintiff, assuming this burden against the evidence of defendant, simply denied that he had any notice or knowledge of the agreement between defendant and Herren, as above stated, making a conflict in the evidence on this issue for the jury to determine, and they decided it against the plaintiff and the trial court approved it, and this court is bound by such determination.

3. Plaintiff further complains that the court committed error in overruling his motion for a directed verdict at the close of defendant's evidence, citing the case of St, Louis & S F. Ry. Co. v. Boush. 68 Okla. 301. 174 Pac. 1036. quoting the rule laid down by the Pacific Reporter's Editorial Staff, where the uncontradicted evidence is to be the basis of the court's ruling. but we cannot see how this rule supports the plaintiff, because, at the time the motion was interposed, there was no contradiction of the defendant's evidence, as to the facts of the agreement, and plaintiff's knowledge of the same. The defendant had assumed the burden of proof on the issues and had put on his evidence first, and the same was undisputed and was strong against the plaintiff, and the court committed no error in overruling the motion.

We have taken the pains to read the entire record of this case and have studied the well prepared briefs of the parties, the evidence, and the instructions of the court, and we think the plaintiff was accorded a fair trial and the verdict of the jury and judgment of the court did substantial justice between the parties.

We, therefore, recommend that the judgment be affirmed.

By the Court: It is so ordered.