CASE 91.—ACTION BY C. BOTHWELL AGAINST H. F. CORUM.
        —December 9, 1909.

## Bothwell v. Corum

Appeal from Knox Circuit Court.

H. C. FAULKNER, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Reversed.

1. Bills and Notes.—Drafts—"Negotiable Instrument."—An instrument in writing, signed by the drawer and containing an unconditional order to pay a certain sum in money at a fixed future date to the order of a specified person, and addressed to a drawee, named therein, was a "negotiable instrument."

2. Bills and Notes—Indorsement—"Notice" of Equity.—To constitute notice of an infirmity in a negotiable bill indorsed before maturity, the indorsee must have actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounts to bad faith, as provided by Ky. St. Sec. 3720b, subsec. 56 (Russell's St. Sec. 1925).

3. Bills and Notes—Drafts—Transfer—Bona Fide Purchaser.— Where there was nothing on the face of certain drafts transferred to plaintiff before maturity to indicate knowledge of any infirmity in the instruments or the title of the indorser, indicating bad faith of the indorsee in taking them, and the indorsements were regular, the drafts being transferred to the indorsee before maturity in consideration of his payment of 90 per cent. of their face, he was a holder in due course, and was not subject to any defense available as between the drawer and the payee, as provided in Ky. St. Sec. 3720b, subsec. 57 (Russell's St. Sec. 1926).

4. Bills and Notes—Action by Indorsee—Pleading.—Where an indorsee for value before maturity denied any knowledge or notice of the fraud relied on by defendant to defeat the action, it was not material that the indorsee's denial that the instruments were obtained by fraud was insufficient.

JAMES M. GILBERT for appellant.

B. B. GOLDEN for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COM-
MISSIONER—Reversing.

On February 24, 1906, the American Jobbing Asso-
ciation, by its manager, S. G. Dunley, drew six drafts
on appellee, H. F. Corum, of Artemus, Ky., each for
the sum of $52.58 and payable to the order of the
American Jobbing Association, in four, six, eight,
ten, twelve, and fourteen months after date.  Each
of these drafts was accepted by Corum.   Thereafter,
and before the maturity of the drafts, the American
Jobbing Association sold them to appellant, C. Both-
well.  Each draft was indorsed by the American
Jobbing Association and delivered to appellant.  Ap-
pellant paid 90 cents on the dollar for each draft.
Upon the maturity of the first three drafts, appellant
instituted this action against appellee to recover
thereon.   During the pendency of the action, the
other three drafts matured and were set up in an
amended petition.   Appellee defended on the ground
that the drafts were procured by fraud, and that ap-
pellant purchased same with notice thereof.  The
jury returned a verdict in favor of appellee.   From
the judgment based thereon, this appeal is prose-
cuted.

Appellant contends that the trial court erred in
refusing to award him a peremptory instruction.

The evidence, in brief, is as follows: Appellee, H. F.
Corum, testified that some time in February, 1906, a
salesman by the name of T. M. Morris came to his
store for the purpose of inducing him to purchase a
lot of jewelry.   The salesman told appellee that he
could pay for the jewelry along every two or three
months, and at the end of twelve months they would
send a man and take up the jewelry left on hand—
that is, the balance of the unsold goods—and give

him credit for it. The firm then shipped the jewelry, and a few days thereafter the drafts came. At first, appellee refused to sign the drafts, but a man by the name of Dooley came and persuaded him to sign them. Dooley made the same representations to him as the other salesman; that is, that appellee could pay for the jewelry as long as he sold it, and at the end of 12 months they would send a man to take it up, and, if appellee owed them anything at the end of that time, he was to pay them what he owed, and they would give him credit for the balance. He then signed the drafts with that understanding. Had it not been for that understanding, he would not have signed them.

After that, appellee sold some of the jewelry, and found that it did not give satisfaction. The jewelry was not as represented by the agent. He thereupon wrote the American Jobbing Association that he desired to return the jewelry and pay them for that which he had sold. He received no answer to his letter. Upon cross-examination appellee testified as follows: "Q. You don't undertake to say when this paper was transferred to Bothwell, the plaintiff in this action? A. No, sir. Q. You don't undertake to tell the jury what amount Bothwell paid for this paper, do you? A. I don't know what he paid for it. Q. You don't undertake to tell the jury anything about Bothwell knowing anything about the transaction between you and this company, do you? A. No, sir; I don't. Q. So, then, you can't say to the jury that the transaction between him and this American Jobbing Association wasn't a genuine transaction? A. No, sir." Appellee further testified that he accepted the instruments sued on, that he was then 21 years of age, and had a fairly good common-school education.

Appellant testified that he was 31 years of age. He resided in Iowa City, Iowa, and was engaged in the loan and brokerage business, and was engaged in that business during February, 1906. The American Jobbing Association was a partnership. It was owned by W. F. Main. Appellant was in no wise interested in the American Jobbing Association, nor was he related, directly or indirectly, to any of its officers or employes. He paid 90 per cent. net for the drafts in question. They were indorsed by the American Jobbing Association and delivered to him, and he paid for them before maturity. The drafts were complete and regular on their face. None of them had been dishonored at the time he purchased them, and he had no notice of any defect in their title. The drafts were indorsed and transferred to him in good faith and for a valuable consideration and before maturity. At the time he had no notice of any defect in the title of the person negotiating the drafts, and no notice of any infirmity in the instruments. The drafts were purchased on May 29, 1906, and were indorsed and delivered to him on that day.

On the back of each draft are the following indorsements:

"4196.

"Bank—Nat. Bk. of John A. Black,
    "Address Barbourville, Ky.

"May 29, 1906
    "Pay to the order of C. Bothwell.
    "American Jobbing Association,
    "By C. H. Dayton, Mgr.

"Pay to the order of
    "Johnson County Sav. Bank,
    "Iowa City, Iowa, C. Bothwell.

"Pay any bank or banker, or order.

"Johnson County Savings Bank,

"Iowa City, Iowa,

"Geo. L. Folk, Cashier.

"Says return."

It is evident that each of the drafts in question fulfilled the requirements of a negotiable instrument; each is in writing and signed by the drawer; each contains an unconditional order to pay a sum certain in money; each is payable at a fixed future time; each is payable to the order of a specified person; each instrument is addressed to a drawee, and he is named in the instrument with reasonable certainty. Not only is each draft a negotiable instrument, but each was actually negotiated by the indorsement of the holder, the American Jobbing Association, and the negotiation was completed by delivery.

The question, then, arises: Was appellant a holder in due course? It is apparent from the record that each draft is complete and regular upon it face. Appellant became the holder of each draft before it was due and without notice that it had previously been dishonored. He took them in good faith and for value. He swears that at the time they were negotiated to him he had no notice of any infirmity in the instruments or defect in the title of the person negotiating them. While appellee testifies to facts going to show fraud on the part of the agent of the American Jobbing Association, he testifies to no facts going to show that appellant had notice of the fraud. To constitute notice of an infirmity in an instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounts to bad faith. Ky. St. Sec. 3720b, sub-

sec. 56. The proof in this case fails to come up to either one of these requirements of the statute. There is nothing in the case to show that appellant had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instruments amounted to bad faith. On the contrary, his evidence, which is unimpeached by that of any other witness or by any circumstances in the case, tends to show that he acquired the drafts before maturity, for value, and without notice of any infirmity therein or defect in the title of the American Jobbing Association, which indorsed, delivered, and sold the drafts to him.

Nor is there anything upon the drafts themselves tending to show knowledge of such facts on the part of appellant as would constitute bad faith on his part in taking them. The indorsements are simply the usual indorsements to be found upon any draft which may be sold, indorsed, and delivered, and then deposited at a bank for collection. It is apparent, therefore, that appellant was a holder in due course. That being the case, he took the drafts free from any defect of title of prior parties, and free from defenses available to prior parties among themselves. Ky. St. Sec. 3720b, subsec. 57. We therefore conclude that the trial court erred in refusing to instruct the jury peremptorily to find for appellant.

Nor is there any merit in the contention of appellee that he is entitled to judgment on the face of the pleadings. While appellant's denial that each of the instruments was obtained by fraud was insufficient, yet he did deny the only matter materially affecting his right to recover; that is, any knowledge or notice of the fraud relied on.

Judgment reversed and cause remanded for a new trial consistent with this opinion.