(November 27, 1911.)

# EDGAR J. VAUGHN, Appellant, v. J. P. JOHNSON et al., Respondents.

[119 Pac. 879.]

NEGOTIABLE PAPER—ADMISSION OF EVIDENCE—BONA FIDE HOLDER—ACTUAL KNOWLEDGE OF INFIRMITY IN INSTRUMENT—BAD FAITH—INSTRUCTIONS—COSTS.

(Syllabus by the court.)

1. Where the evidence of a witness is taken by deposition after notice given as provided by statute, and the adverse party neglects to appear and cross-examine the witness and thereafter gives notice in conformity with law of the taking of the deposition of the same witness, and in pursuance of such notice takes the deposition of such witness, and in so doing cross-examines the witness on the deposition previously given by him, it is erroneous procedure to admit the later deposition as a part of plaintiffs' case and before defendant has opened his side of the case. The party taking such deposition should be required to withhold the same and introduce it as a part of his defense in making his own proofs.

2. Mere evidence of fraud or deception in procuring a negotiable promissory note which is fair and regular on its face is not sufficient to raise a presumption of bad faith against the purchaser of such paper in due course, nor should such fact be given any consideration by a jury in determining the other fact, namely, that the holder of the instrument had actual knowledge of the infirmity or defect or knowledge of such facts that his action in taking the instrument amounted to bad faith.

3. Evidence of fraud in procuring the execution of a negotiable instrument shifts the burden of proof as to the good faith of a purchaser thereof before maturity and is admissible for that purpose, but of itself in no way tends to establish bad faith on the part of such purchaser.

4. Those who execute negotiable paper and set it afloat are chargeable with a much higher degree of diligence and caution than is chargeable to those who purchase such paper in due and regular course of business.

5. The purchaser of negotiable paper in due course and before maturity is under no duty to make inquiry as to the title to such paper, fair and regular on its face, nor is he under any duty to

inquire into the consideration given for the note or of the transaction out of which it arose. He is only chargeable with facts which actually come to his knowledge; that is, actual knowledge of a defect in the title, want of consideration, or such facts as would constitute a defense to the note as between the maker and original payee, or actual knowledge of such facts and circumstances as would lead an honest and fair business man to make further inquiry and which inquiry if made would lead to the discovery of the fraud, defect and defenses.

6. An instruction to the jury that if they find from the facts of the particular transaction "or knowledge of other like transactions of McLaughlin Brothers that the plaintiff is not acting honestly, then they had a right to find that he did not act honestly in the purchase of this note," was erroneous in that it authorized the jury to infer that the purchase of a negotiable instrument was fraudulent where they found that such purchaser had subsequently done some act they did not consider honest and fair.

7. Where a party failed to appear at the time and place designated in a notice for taking deposition and cross-examine the witness and thereafter duly and regularly served notice of the taking of the deposition of the same witness, and in pursuance thereof took the deposition of such witness which consisted of a cross-examination of the witness on the deposition previously given, the costs and expense of taking such subsequent deposition should not be allowed as a part of the costs of the case.

APPEAL from the District Court of the Eighth Judicial District for the County of Kootenai. Hon. Robert N. Dunn, Judge.

Action on a promissory note. Judgment for defendants and plaintiff appealed. *Modified and affirmed.*

Reed & Boughton, and Robert H. Elder, for Appellant.

There is nothing in the case to show that appellant had actual knowledge of the infirmity or knowledge of such facts that his action in taking the instrument amounts to bad faith. (*Bothwell v. Corum,* 135 Ky. 766, 123 S. W. 291.)

There must be something more than a failure to inquire into the consideration upon which it is made or accepted, because of rumors or general reputation as to the bad character of the maker. (*Goetz v. Bank of Kansas City,* 119 U. S. 551,

7 Sup. Ct. 318, 30 L. ed. 515; *American Nat. Bank v. Lundy* (N. D.), 129 N. W. 99; *Canon v. Farmers' Bank*, 3 Neb. (Unof.) 348, 91 N. W. 585; *Sinkler v. Siljan*, 136 Cal. 356, 68 Pac. 1024; *Lehman v. Press*, 106 Iowa, 389, 76 N. W. 818; *Borgess Inv. Co. v. Vette*, 142 Mo. 560, 44 S. W. 754; *Merritt v. Boyden*, 191 Ill. 136, 85 Am. St. 246, 60 N. E. 907.)

Suspicion of the defenses or the knowledge of circumstances calculated to excite the suspicions of a prudent man will not suffice to defeat the purchaser's title. That result can follow only from bad faith on his part. (*Gray v. Goode*, 72 Ill. App. 504; *Kent v. Barnes*, 72 Ill. App. 616; *Metcalf v. Draper*, 98 Ill. App. 399; *Mann v. Merchants' Loan & Trust Co.*, 100 Ill. App. 224.)

This is true though he is guilty of negligence in not first following up such information for the purpose of disclosing the fraud or illegality to which the suspicious circumstances may seem to point. (*Tourtellotte v. Brown*, 1 Colo. App. 408, 29 Pac. 130; *Coors v. Bank*, 14 Colo. 202, 23 Pac. 328, 7 L. R. A. 845; *Rand v. Stationery Co.*, 1 Colo. App. 270, 28 Pac. 661; *Swift v. Smith*, 102 U. S. 442, 26 L. ed. 193; *First State Savings Bank v. Breckenridge*, 121 Mich. 149, 79 N. W. 1068.)

The court erred in admitting any evidence of fraud in the inception of the contract upon which the note was based, in the absence of any showing made by defendants tending to show that plaintiff had notice of the infirmities in the note, if any there were. (*Drovers' National Bank v. Blue*, 110 Mich. 31, 64 Am. St. 327, 67 N. W. 1105; *Reeve v. Liverpool etc. Ins. Co.*, 39 Wis. 520; *Wetmore v. Markoe*, 196 U. S. 68, 25 Sup. Ct. 172, 49 L. ed. 390, 2 Ann. Cas. 265.)

Whitla & Nelson, for Respondents.

When such facts and circumstances have been shown to the court and jury as were shown in this case, then it becomes a question of fact for the jury to decide whether or not the plaintiff was a purchaser in good faith. (*City Nat. Bank v. Jordan*, 139 Iowa, 499, 117 N. W. 758; *Winter v. Nobs*, 19 Ida. 18, 112 Pac. 525; *Park v. Winsor* (Minn.), 132 N. W.

264; *Citizens' Savings Bank v. Houtchens* (Wash.), 116 Pac. 866.)

Plaintiff knew of McLaughlin Brothers' transactions and could not help but know that they were engaged in swindling deals. The decision of various courts upon this question is conclusive. (*City Nat. Bank v. Jordan,* 139 Iowa, 499, 117 N. W. 758; *Union Nat. Bank v. Winsor,* 101 Minn. 470, 118 Am. St. 641, 112 N. W. 999, 11 Ann. Cas. 204; *Union Investment Co. v. Wells,* 39 Can. Sup. Ct. 625, 11 Am. & Eng. Ann. Cas. 33, and cases cited *supra.*)

"In a proper case the expense of taking depositions is a proper item of costs to be allowed to the prevailing party." (11 Cyc. 121; *Pyne v. Nat. Steamship Co.,* 18 N. Y. Supp. 166; *Finch v. Calvert,* 13 How. Pr. 13; *Cox v. Charleston F. & M. Ins. Co.,* 3 Rich. L. (S. C.) 331, 45 Am. Dec. 771; *Smith v. Servis,* 13 N. Y. Supp. 941, 59 Hun, 552.)

AILSHIE, J.—The motion to dismiss the appeals in this case must be denied, and it is so ordered.

On the 29th day of March, 1906, the respondents herein executed and delivered their promissory note to McLaughlin Brothers as part payment of the purchase price of a stallion. Thereafter and prior to the maturity of the note, and on about the 5th day of February, 1910, McLaughlin Brothers sold and delivered the note to the appellant herein, who thereafter commenced this action against the makers for the collection of the principal and interest thereon. The case was tried before a jury and a verdict was rendered for the defendants and a judgment was thereupon entered accordingly.

A large number of errors have been assigned but most of the questions presented have been considered by this court and passed upon in *Winter v. Nobs,* 19 Ida. 18, 112 Pac. 525, and *Park v. Johnson, ante,* p. 548, 119 Pac. 52. We will therefore only consider such questions as have not received consideration in the foregoing cases.

It seems that the deposition of the appellant was taken in conformity with the statute at Columbus, Ohio, on the 3d day of February, 1911; that at the time of the taking of the depo-

sition no one appeared on behalf of the respondents and no cross-examination was had. Thereafter and about the 27th of March, the attorneys for the defendants served notice on the attorneys for plaintiff that they would take the deposition of the plaintiff at Columbus, Ohio, on the 6th day of May following. The deposition was thereafter taken in conformity with the notice. When this deposition was taken, however, on the part of the defendants, it was taken as if it were a cross-examination of the witness on his previous deposition. The questions were propounded in the form of cross-examination, and the witness' attention was called to the evidence previously given by him. When the case came on for trial, the plaintiff introduced the deposition containing the evidence he had first given. Before the plaintiff rested his case, the defendants offered ''deposition on cross-examination.'' The plaintiff's counsel objected to the introduction of this deposition as a deposition on cross-examination, and insisted that if it be admitted at all it should go in as a part of defendant's evidence when they came to make their defense. The court overruled the objection and admitted the deposition, and the appellant now urges the ruling as erroneous. We think, as a matter of procedure, it was error for the court to admit this deposition as a part of the plaintiff's case. While it was taken on the theory that it was a cross-examination of a witness and was in fact so treated, it had not been taken at the time and in the manner authorized for the cross-examination of the witness. If the defendants failed and neglected to appear at the time noticed and cross-examine the witness, it was their own fault. If, on the other hand, they saw fit to take the deposition of the witness for their own use as a part of their own case, they had a right to do so, but they should have been compelled to introduce this evidence as a part of their own case. We do not think, however, that the error thus committed calls for a reversal of the judgment. Had the plaintiff been nonsuited after the introduction of this deposition and without putting the defendants on their defense, there might be some merit to the contention made by the appellant and there might be prejudicial error under such

circumstances. In the case at bar, however, the bulk of the record consists of evidence introduced on the part of the defendants and so the jury had the entire case before them for their consideration.

It is contended that the court erred "in admitting the evidence of the defendant's witnesses which tended to show the condition of the horse and the alleged fraud surrounding the inception of the contract upon which the note was based." In other words, the appellant contends that evidence of failure of consideration or fraud in procuring the note could not properly go to the jury and had no bearing on the case, unless the defendants could successfully show that the plaintiff who purchased the note before maturity either "had actual knowledge of the infirmity or defect or knowledge of such facts that his action in taking the instrument amounted to bad faith." This contention is substantially correct. (*Winter v. Nobs,* 19 Ida. 26, 112 Pac. 525.) The difficulty, however, with which appellant is confronted in the case at bar is that the facts and circumstances in the present case tending to show "actual knowledge" and "bad faith" were sufficient to go to the jury, and were likewise sufficient to justify them in concluding and finding as a matter of fact that the plaintiff either had actual knowledge of the fraud and deception that had been practiced and the infirmity in the instrument or had knowledge of such facts and circumstances that would have led him if acting in good faith to ascertain the true situation. The frequency with which these cases are arising and finding their way into this court leads us to suggest that mere evidence of fraud or deception in procuring negotiable promissory notes which appear fair on their face is not sufficient to raise any presumption against the purchaser of such paper; nor should such facts be given any consideration whatever by a jury in determining *the other fact; namely, that the holder of the instrument had actual knowledge of the infirmity or defect or knowledge of such facts that his action in taking the instrument amounted to bad faith. This latter fact is an independent fact which must be determined upon evidence wholly independent of the original transaction in which the*

*note was executed.* *Bona fide* holders of negotiable paper are entitled to absolute protection and cannot be in the least chargeable with any fraud to which they were not parties that was practiced in procuring the note or in the contract out of which the note arose. Evidence of fraud in procuring the execution of a note shifts the burden of proof as to good faith but of itself in no way tends to establish the bad faith of a purchaser of such note. Those who execute negotiable paper and set it afloat are chargeable with a much higher degree of diligence and caution than is chargeable to those who purchase such paper in the due and regular course of commercial transactions. The frequency with which such defenses as the one set up in this case are being plead reminds us that there is either a grave need of invoking the criminal statutes of this state against persons who are procuring the execution of negotiable paper through fraud, deception and misrepresentation, or else there is gross negligence on the part of many who are executing such paper and sending it broadcast in the channels of commerce.

The appellant has assigned a great many errors against the action of the court in admitting certain evidence offered by respondents. We have examined the record in this respect and do not think there was any prejudicial or substantial error committed by the court in the admission of evidence. These questions have all been considered and passed upon in *Park v. Johnson* and *Winter v. Nobs, supra.*

The appellant has assigned as error the action of the court in giving a number of instructions and in modifying certain instructions requested by the appellant. We shall only notice two of these instructions. Instruction No. 22 is, to say the least, misleading, and we do not think should be given in such a case. It is as follows:

"The court instructs the jury that a person who, in purchasing negotiable paper, wilfully remains ignorant of facts which are apparent from the transaction, or refrains from making inquiry lest he should become possessed of knowledge of infirmities in the title of the paper which he is about to purchase, shows lack of good faith, and a plaintiff cannot say

that he did not know the facts regarding the title of negotiable paper when such lack of knowledge is predicated upon an evasion of plain duty, and you have a right to consider all of the facts and circumstances surrounding the alleged purchase of this note, in determining whether or not the plaintiff wilfully refrained from making inquiry regarding the title of McLaughlin Bros. to the note in controversy in order not to learn anything regarding their title thereto, and the court charges you that wilful ignorance, if it be shown by the evidence, involves bad faith and·is as binding upon the plaintiff as a positive knowledge of the defendants' title would have been.''

The foregoing instruction is calculated to mislead a jury. They are likely to infer from such an instruction that the purchaser of a negotiable instrument cannot ''wilfully refrain from making inquiry regarding the title'' to a note he is about to purchase; in other words, that it is the duty of such a purchaser to always make inquiry as to the title. Such is not the law. The purchaser of negotiable paper in due course and before maturity is under no duty to make inquiry as to the title to paper, fair and regular on its face, nor is he under any duty to inquire into the consideration given for the note or of the transaction out of which it arose. (*McNight v. Parsons*, 136 Iowa, 390, 125 Am. St. 265, 113 N. W. 858, 22 L. R. A., N. S., 718.) He is only chargeable with facts which actually come to his knowledge. Those facts may be *actual knowledge of a defect in the title, want of consideration or such facts as would constitute a defense* to the note as between the maker and original payee; or *actual knowledge of such facts and circumstances* as would lead an honest and fair business man to make further inquiry and which inquiry if made would lead to the discovery of the fraud, defect and defenses. In other words, it must be such actual knowledge of the *defenses* or such actual knowledge of *facts and circumstances* that a failure to make further inquiry would charge a reasonably prudent business man with bad faith and dishonest motives. (*Winter v. Nobs*, 19 Ida. 18, 112 Pac. 525; *Park v. Johnson*, ante, p. 548, 119 Pac. 52; *Bothwell v. Corum*, 135 Ky. 766, 123

S. W. 291.)   The first part of the instruction with which we are dealing proceeded upon the correct view of the law, but the vice is to be found in the closing part of the instruction. In view of the fact, however, that the court had correctly instructed the jury on this subject and in consideration of the nature of the evidence that was submitted to the jury, we are satisfied that the jury were not misled in this respect.

The other instruction which we think was erroneous is No. 26, and is as follows:

"The question of honesty of the plaintiff in this transaction is one of the things by which you are to be guided in determining his *bona fides,* and if you find from the facts and circumstances given in evidence surrounding this transaction, and the knowledge of the plaintiff of other like transactions of McLaughlin Brothers, if shown in evidence, that the plaintiff is not acting honestly, then you have a right to find that he did not act honestly in the alleged purchase of this note."

This instruction advised the jury that if they found from the facts of this particular transaction "or knowledge of other like transactions of McLaughlin Brothers that the plaintiff is not acting honestly, then they had a right to find that he did not act honestly in the purchase of this note." This was erroneous. The jury might conclude that the holder of a note had acted dishonestly with the maker in some respect, as, for example, a failure to make the proper indorsement of interest or principal paid, or a failure to defer bringing a suit for a given length of time, or in any number of respects, and yet there be no evidence whatever that he acted dishonestly or in bad faith in the purchase of the note itself. However dishonestly the purchaser of a note may have acted subsequent to the purchase thereof, that fact alone would not justify the conclusion that he acted in bad faith or dishonestly in the purchase of the note.

The appellant has also prosecuted an appeal from the order of the district court in taxing costs. It appears that the respondent claimed costs in the sum of $15.15 for taking the deposition of appellant which has been hereinbefore considered. The specific items for which this $15.15 is charged

do not appear in the memorandum of costs. The cost bill reads: "Expenses in securing deposition of Edgar J. Vaughn for notary fee, stenographer, securing attendance of witness, swearing witness, and return of witness and transcribing testimony." In the first place, this is not properly itemized to show what was a legal charge and what was not; and, in the second place, this extra expense was incurred by reason of the failure of the defendants to appear at the time and place specified when and where the deposition was taken and cross-examine the witness. This also entailed extra trouble and expense on the plaintiffs in attending and having counsel present a second time for the taking of this deposition. For these reasons this item should have been stricken from the cost bill, and it will be so ordered.

We do not think that any error which has been committed is of such a nature or character as to require a reversal of the judgment. From a view of the whole record, we are satisfied that the same result would have been obtained and the same conclusion would have been reached by the jury had the errors hereinbefore pointed out not been committed, and we are satisfied that the evidence adduced in this case justified the verdict returned. The judgment should therefore be modified to the extent of striking therefrom the item of $15.15 taxed as costs and, as so modified, is hereby affirmed. Costs of appeal will be equally divided between appellant and respondents.

Cause remanded with directions to modify the judgment as herein indicated.

Sullivan, J., concurs.

STEWART, C. J., Dissenting.—I concur in the majority opinion upon the merits of the case, but I dissent to that portion of the opinion in relation to the costs disallowed for the taking of the deposition for cross-examination of Edgar J. Vaughn, the plaintiff, and also in dividing the costs upon this appeal.

The only record presented to this court as to the costs for taking the cross-examination of Edgar J. Vaughn consists in

the cost bill itself and the affidavit supporting the same made by E. V. Boughton, and the affidavit of E. R. Whitla in opposition thereto.  The item as shown upon the cost bill is as follows: "Expense in securing deposition of Edgar J. Vaughn for notary fee, stenographer, securing attendance of witness, swearing witness, return of witness and transcribing testimony, $15.15."  This court disallows this item.  It appears from the transcript that this item was incurred in taking the second deposition upon the cross-examination of the witness Vaughn.  The evidence of said Vaughn so taken by a deposition was admissible and considered proper, relevant, material and proper cross-examination and properly admitted in evidence at the trial.  That being true, it should make no difference in the allowance of the expense of same as costs, whether it was taken at the same time that the original deposition was taken or afterward, because if taken when the original deposition was taken the same expense would necessarily have been incurred in taking and certifying the same by the stenographer, and would have been a proper charge as costs in said case, and if such evidence was proper and thereafter taken and the same expense incurred, I can see no reason why the same should be disallowed as costs of the trial.  It is admitted in the evidence of E. V. Boughton, filed in support of the motion to retax, that at least six dollars could properly be taxed as such costs of said deposition, and under this admission, there can be no reason given that I can see why at least six dollars should not be allowed.  The only additional costs that necessarily were incurred in cross-examining the witness at a time different from the time when the deposition was originally taken was in swearing the witness and certifying to his testimony by the notary.  The act of the notary in writing down the questions and answers was the same as would necessarily have been incurred had such examination been taken at the time the original deposition was taken, and would have been properly chargeable as costs.

I am unable also to concur in the majority opinion which divides the costs of this appeal between plaintiff and respondents.  The main appeal upon the merits of this case is decided

in the majority opinion in favor of the defendants, while upon the appeal from the order overruling the motion to retax the costs, the order of the trial court is modified and the item of $15.15 is disallowed. The transcript consists of 237 pages, 210 of which contains the record of the appeal upon the merits, while only 10 pages of the transcript is devoted to the question of the appeal from the order of the trial court refusing to retax the costs, and even allowing the record containing the cross-examination of the witness Vaughn as a necessary part of the appeal from the order, the total record thus made would be 27 pages, making at most the record on appeal from the order 27 pages. Yet the majority opinion taxes the respondents with half the costs of this appeal when the record necessary to have presented the appeal from the order was only 27 pages, while the record upon the merits, which also necessarily includes the deposition of the same witness, amounts to 237 pages, and yet the appellant is only charged with costs upon this appeal the same as is charged to the respondent. I cannot agree with this principle of adjustment of costs. To my mind it is unfair and unjust, and may often lead to injustice in disposing of the question of costs.