## PHILLIPS et al. v. ROPER et al.

No. 22526.   March 26, 1935.

Edw. J. Gilder, for plaintiffs in error.

A. L. J. Meriwether, Orlando Swain, and J. H. Stephens, for defendants in error.

BAYLESS, J. M. C. Brown filed an action in the district court of Okmulgee county, Okla., to foreclose a second mortgage upon certain real estate owned by Beulah R. Roper. M. J. Richardson & Company, a copartnership, which was the holder of record of a prior mortgage on this real estate, and who will be referred to hereinafter as Richardson, was made a party defendant. Thereafter this defendant company filed pleadings from which it appeared that it no longer owned the debt or the evidences thereof, but that the same had been sold to other parties. It is sufficient here to say that it was learned that the three bonds (the debt was evidenced by three promissory notes, but they are always referred to by the parties in correspondence as bonds and will be so referred to herein) and the mortgage securing them were owned and held by Laura V. Phillips, Katheryn G. Oppold, and Continental Bank & Trust Company as trustee under the last will and testament of Anna Pridmore, deceased. These parties will be referred to herein as "holders" except when they are named individually in the discussion of the evidence.

M. C. Brown was brought into this court as defendant in error, but as no objection to his judgment (except as to the priority of its lien) is raised, he will not be noticed further herein. He has filed a brief in support of the priority of his lien, but as this question turns entirely upon the determination of the issues between Roper and the holders of the bonds, he is affected by the determination of that issue.

The action finally came to trial in the district court after numerous pleadings had been filed. No useful purpose would be served in naming these pleadings or attempting to outline or summarize them. It is sufficient here to outline the issues between the parties at and during the trial.

Holders pleaded the bonds and mortgage held by them and sought foreclosure as against Roper and Brown.

Roper, upon the theory that Richardson and one Ward, in Illinois, were agents of holders or acting for them, alleged that holders and these agents exacted a bonus or commission for the making of this loan, that this constituted usury and tainted the bonds, and that holders are not bona fide purchasers thereof. Roper further contended that Richardson held an assignment of rents and profits under which it collected, as agents for holders, more than enough to discharge the indebtedness. Roper contended, further, that such collections, plus the recovery on the usury, would more than discharge the money actually advanced to her by holders and would leave holders and Richardson indebted to her for the excess of these exactions as provided by statute.

Richardson disclaimed as to the property and denied the allegations of Roper, but upon the order of the court, rendered an accounting of what it had collected by virtue of the assignment of rents.

From an examination of the record, we find substantially the following state of facts to have existed: (1) Roper owned the real estate involved herein, and the property being incumbered (including a mortgage to Brown), she decided to refinance the property. (2) She made a written application to Richardson upon a form furnished by Richardson on the 1st day of August, 1924, in which she distinctly appointed Richardson her agent to procure a loan for her upon this property in the amount of $2.500. At the same time she executed a "loan contract" with Richardson, by which she appointed Richardson her agent to perform a number of duties in connection with the procuring the loan and disbursing it, for all of which she agreed to pay Richardson $400. (3) On the same day, Richardson wrote to John A. Ward, Sterling, Ill., inclosing the application and asking, in effect, if he would be interested in the loan, and advised that the bonds and papers would be ready to forward to him within a few days. (4) Richardson and Ward had been acquainted for many years and Ward had previously bought loans from Richardson, as Ward testified, at a specified discount—but Richardson intimated in his testimony, the custom had been for Ward to divide the commission which it charged. (5) August 5, 1924, Ward wrote to Richardson that he would accept the loan and asked that the papers be forwarded as soon as possible. (6) August 7, 1924, Richardson wrote Ward inclosing the bonds, an insurance policy, and Richardson's guarantee upon the bonds. These bonds were indorsed by Richardson to blank, without recourse.

The bonds are dated August 1, 1924. One is for $1,200, one for $800, and one for $500. These instruments were always referred to in the correspondence as bonds (they are captioned "first mortgage note" and are promissory notes in the full sense of the term). (7) August 11, 1924, Ward acknowledged receipt of these instruments, urged the speedy delivery of the mortgage and abstract and remitted for the $1,200 bond, less $30, the discount he claimed and testified about. (8) On the same day Ward sold the $1,200 bond to Anna Pridmore and filled in the blank indorsement on this bond by inserting the name of Anna Pridmore, who at that time had on deposit with him that sum for the purchase of securities. The $1,200 bond, therefore, bears the indorsement of Richardson to Anna Pridmore. Anna Pridmore has since died and the Trust Company above named has represented her interest throughout this action. (9) August 27, 1924, Ward remitted the balance due on the $2,500, less $32.50, the commission he claimed and testified about. Richardson acknowledged receipt and promised to forward the mortgage and abstract as soon as possible, but it is not clear from the record just when these were forwarded to and received by Ward. The assignment of mortgage was executed by Richardson to blank. (10) September 22, 1924, Ward sold the $500 bond to Katheryn G. Oppold for $506, which was the principal plus accrued interest. Ward testified this was an outright purchase and sale and no fiduciary or representative relationship existed between him and her. Ward testified he inserted her name in the blank indorsement of Richardson on the bond and delivered the bond to her. (11) September 25, 1924, Ward sold the $800 bond to Isabella N. Honens for $804.40, the principal plus some interest. He testified he inserted the name of Isabella N. Honens in the blank indorsement of Richardson on the back of the bond and delivered the bond to her. He testified that thereafter and on the 18th day of April, 1927, he bought this bond back from Isabella N. Honens for $817.42, and on the same day resold it to Laura V. Phillips for the same amount. The indorsement of Isabella N. Honens to Laura V. Phillips, without recourse, appears on this bond below the indorsement of Richardson to Isabella Honens. (12) Ward's name does not appear on any of these instruments. At one of the hearings it was agreed that if he was present at the trial he would testify that he acted as agent and attorney for these persons in the purchase of these bonds. It was

further agreed in the stipulation that he would testify that he knew nothing of the arrangements between Roper and Richardson other than was disclosed by the instruments referred to and that he gave no information to the holders regarding Roper's and Richardson's agreements or relationships. Later his deposition was taken and introduced in evidence. Therein he testified to his ignorance of Roper's relationship to Richardson and further testified that he gave no information thereon to holders. He contradicted the stipulation referred to by saying that he was not the agent or attorney for holders in these transactions and that his transactions with them were isolated and casual and related solely to the particular transaction at hand. He testified further that holders never saw or communicated with Richardson during the times herein referred to. He testified, further, that he had no knowledge of the execution of the assignment of rents by Roper to Richardson until after he had transferred these bonds to holders. (13) The living holders testified by deposition that they purchased the bonds from Ward; that they did not know Richardson; that they did not know Roper, nor did they know of any relationship or arrangements between Roper and Richardson other than were disclosed by the face of the instruments which they owned. (14) August 1, 1924, when Roper made application for the loan, as aforesaid, she executed an assignment of the rents and profits arising from this property. Copies of this assignment appear at two places in the record, but we cannot determine whether this instrument was recorded. (15) Without going into details, it appears that Richardson collected rents from this property and made certain expenditures, leaving a balance in its hands, according to the court's findings, of $810.89 belonging to Roper. It appears from the record that Richardson paid into the hands of the court clerk, pursuant to order of the court, $389.93, which it contended, under its accounting pursuant to the order of the court, was all the money it held belonging to Roper.

The trial court made certain findings, the ones material to this appeal being, in substance, as follows: (1) The execution, delivery, and transfer of the bonds and mortgage and the present ownership thereof by holders. (2) That in making this loan Richardson, in Oklahoma, and Ward, in Illinois, were agents for holders. (3) That the method of handling this loan, as disclosed by the record, evidenced a subterfuge

228

and scheme on the part of holders, Ward, and Richardson by which usury was exacted from Roper and that the loan was made directly from holders to Roper by reason of the showing that Richardson never applied any of the money to Roper's benefit until it was actually received by him from holders, through Ward. (4) That $400 was exacted from Roper as a bonus, and the total amount of interest, bonus, etc., paid by Roper to holders and Richardson and Ward was $1,347.91, or in excess of the legal rate of interest in Oklahoma. (5) That holders knew of Richardson and Ward's intention and arrangements to exact this bonus. (6) That holders were not bona fide holders of the bonds, but held them subject to legal defenses, which included the statutory defense of usury and double liability for the exaction thereof, amounting to $2,695.82, plus $673.95 attorneys fee.

Upon these findings the court rendered judgment, in substance as follows: For holders against Roper for $2,100, the amount of money actually advanced to Roper; for Roper against holders for $2,695.82, plus $673.95 attorney fee, or a total of $3,369.77, less $2,100, leaving a balance of $1,269.77, with interest; and for the cancellation of the mortgage executed by Roper and held by holders. Judgment was rendered for Roper against Richardson, but as no appeal therefrom was taken, it plays no part herein.

From this judgment holders appealed to this court. They make several assignments of error, but really stress only one. They insist that the judgment of the trial court involving them and Roper is against the clear weight of the evidence. We agree.

The law of bills and notes is too elementary and too well known to need citation. It is enough to say that, if as a matter of fact holders were bona fide purchasers of the bonds in question, the judgment of the trial court is erroneous.

Let us analyze this evidence to see what there is in it to support holders' contention, or to support the judgment of the trial court.

First: The bonds and mortgage. No one contends that there is anything on the face of these instruments to give holders any notice, within the meaning of the law on bills and notes.

Second: (a) The assignments of the rents and profits; and (b) the written guarantee of Richardson on the bonds.

We will notice the assignment of rents and profits first. This instrument was not recorded, in so far as this record shows, so that it cannot be contended it gave constructive notice even if we concede that constructive notice would be sufficient, which we do not. Ward did not have actual knowledge of the existence of this instrument until after he had sold the bonds to holders. When Ward thereafter learned of the existence of this instrument he did not pass on to holders such information. This particular transaction was a closed incident in so far as the purchase and sale of the bonds was concerned. After-acquired knowledge by agent is not imputable to principal. See First Nat. Bank of Ada v. Stephenson et al., 119 Okla. 46-47, 247 P. 993. To impute to the principal (holders) knowledge of facts learned by Ward (as holders' agent) after he had completed the transaction in hand, and to thereby change the position of holders to Roper with reference to these negotiable instruments, is not sustained by either rule or reason.

We will next consider the written guarantee executed by Richardson with reference to the bonds, and sent to Ward. No one contends that this instrument came to the attention or knowledge of holders, or that they availed themselves of the benefits thereof. It did not create a relationship of any character.

In connection with the discussion on both of these points we call attention to what we said in Weyl v. Smith, 122 Okla. 216, 253 P. 982, in which case two similar instruments were attempted to be given the same effect as the two instruments under consideration herein.

Third: Whose agent was Richardson? There can be no doubt upon this point. See Chase v. Commerce Trust Co., 101 Okla. 182, 224 P. 148. At the very inception of the loan transaction Roper appointed Richardson her agent. This was before Ward had been written on this loan. It was before holders were dealt with by Ward. No witness testified to contradict the testimony of Ward and holders that Ward was not holders' attorney or agent, or to contradict their testimony that Richardson was not agent for holders. There is in the record the stipulation above referred to, which may be treated as sufficient to contradict this testimony on this point and to raise a conflict as to the relation of principal and agent between holders and Ward. But it stops there. It does not show the relation of agency or partnership between Ward and Richardson. Even if we determine the relation of agency between holders and Ward in favor of the

court's judgment, it does not serve to support the judgment. It was agreed in the stipulation and positively testified to by Ward in the deposition that he never had any knowledge of the bonus taken by Richardson, nor did holders get any such information from him, nor did holders know that he took a discount from the proceeds of the loan. No one intimated that holders or Richardson ever held out to anyone the relation of agency between them. The question of agency in this respect fails of materiality to the question.

Fourth: Is proof of the previous course of dealings between Ward and Richardson and of knowledge thereof on the part of holders sufficiently established? See Bale v. Wright, 120 Okla. 174, 252 P. 56, as to rule on custom and the necessity of knowledge thereof on the part of holders. It is clear that these two had had previous dealings. There is an apparent conflict in the record concerning some features of these dealings. Richardson intimated that Ward shared in the bonus or commission taken with each loan. Ward testified that he received a specified discount on each loan purchased, and received no part of Richardson's bonus or commission. Whatever their past custom had been, there is no conflict in their testimony regarding this particular transaction. Each makes it abundantly clear that Ward deducted a specified discount which bore no particular relation to the bonus, that Richardson paid him no part of the $400 nor gave any information about it, and that the $400 bonus was arranged for before Ward ever heard of this loan. Holders are not in any wise connected with the previous dealings, nor with knowledge thereof. We are of the opinion that it furnishes no support for the court's judgment.

Fifth: Did holders violate usury laws? It is clear that holders received from Roper the rate of interest called for in the bonds, in so far as the record shows interest paid. It is certain from the record that Ward deducted from the $2,500 sent to Richardson a discount of $62.50. The court found that Richardson took the $400 bonus contracted for, and that only $2,100 was ever applied to Roper's benefit. However, it is just as clear and certain from the record that Anna Pridmore paid Ward $1,200 for her bond; that Katheryn G. Oppold paid Ward $506 for her bond; and that Laura V. Phillips paid Ward $817.42 for her bond. It is also clear beyond dispute that neither of these parties knew Ward took a discount on the loan or that Richardson received a bonus for procuring the loan, and that neither of them received any part of the discount and bonus, or any benefit therefrom. As to Laura V. Phillips, the record conclusively shows that she did not buy her bond until nearly three years after the above transaction. How she could be charged with the effect of the transactions on the theory she participated therein, from the record before us, is beyond comprehension.

Sixth: Does the evidence support the finding that holders made the loan to Roper? Roper contracted with Richardson to procure her loan, and as she did not specify from whom the money was to be procured, we must assume that this was immaterial to her and was purely a concern of Richardson's. Richardson offered the paper to Ward, who accepted it. Richardson testified he knew Ward bought this type of paper for his own investment, as well as to sell to other investors for the discount which Richardson allowed him. Richardson testified he did not know what Ward's intention regarding this loan was. He sent him the papers indorsed in blank.

Ward said the $1,200, less discount, which he sent first was his own money, but he immediately transferred the bond to Anna Pridmore and appropriated her money on deposit with him to his own account and thereby made $30, the discount. He sent the balance of the loan less his discount a month before he received payment from Oppold or Honens for the bonds which he sold them. Phillips' money did not come into his hands until nearly three years later. Clearly it was not holders' money which was forwarded to Richardson. It is nowhere hinted or shown in the record that holders knew of the transaction or had any intention with regard thereto in the sense of a person directly making a loan to another. Holders and Ward testified they were dealing between themselves. That it happened to be Roper's paper they were dealing with made no difference to them, in our opinion, for they would have as readily bought and sold the paper of any other individual.

Nor does the fact that Richardson did not apply this money to Roper's benefit until he had received it from Ward alter this situation. Richardson did not contract to advance the money to Roper. She made him her agent and permitted him to receive this money and pay it out on her account and for her benefit at his discretion, and his acts and conduct acquiesced in by her at that time were her acts and conduct and

still are, in so far as holders are concerned, under this record. They cannot be held legally responsible for the alleged improper or unlawful acts of Roper's agent toward her.

We have touched upon all of the issues which we believe are presented by this record material to a determination of the appeal. We wish, however, at this point to advert to our discussion under the fifth point, that is: Whether the usury laws were violated by holders. The evidence shows, as we have before pointed out, that Ward and Richardson received a discount and bonus, without the knowledge or participation therein by holders. Ward is not a party to the action. Richardson is, and Roper prayed for judgment against Richardson as well as against holders for the usury taken. Judgment was rendered against holders, who had no knowledge thereof and who did not benefit therefrom, but no judgment was rendered against Richardson, who, under this record, was the guilty party, if any one was.

We find no evidence to support the judgment of the trial court. We can only believe that the trial court, from all of the record, probably was suspicious and felt sympathetic toward Roper. Suspicion and sympathy are not proper objects upon which to base a judgment. We said in Owens v. S. W. Mortgage Co., 101 Okla. 33, 223 P. 870 (quoting from Fleming v. Drew, 88 Okla. 160, 212 P. 306) ;

"In an action on a promissory note, by a purchaser in due course, for a valuable consideration, before maturity, the defense that the holder is not an innocent purchaser cannot be established by suspicion of defect of title or the knowledge of circumstances which would excite suspicion in the mind of a prudent man, or of circumstances sufficient to put him upon inquiry, but that result can be produced only by bad faith on his part."

In the Owens v. S. W. Mtg. Co. case, supra, we went on to say that knowledge, in addition to bad faith, must be shown.

The judgment of the trial court is therefore reversed; and the cause is remanded to the district court of Okmulgee county, Okla., with directions to enter judgment for holders against Roper for the full amount prayed for and shown to be due in the record, including interest, attorneys fees and all costs, and for the foreclosure of holders' mortgage against all of the parties to this record as a first, paramount and superior lien, and for any other relief proper and necessary to the full and perfect enjoyment of the holders' rights under the bonds, mortgage and lien, and this opinion; and said district court is further directed to take such other and further steps as are necessary to a final disposition of this cause not inconsistent with the views herein expressed.

McNEILL, C. J., OSBORN, V. C. J., and PHELPS and CORN, JJ., concur.