## COHEN v. SUPERIOR OIL CORPORATION et al.

No. 24848. Oct. 27, 1936.

Rehearing Denied July 13, 1937.

Application for Leave to File Second Petition for Rehearing Denied
Sept. 21, 1937.

Steele & Daugherty and Cravath, de Gersdorff, Swaine & Wood, for plaintiff in error.

Edward P. Marshall and F. A. Bodovitz, for defendants in error.

OSBORN, V. C. J. This is an appeal by Wm. W. Cohen, hereinafter referred to as claimant, from an order of the district court of Tulsa county disallowing a certain claim filed by said claimant in a receivership proceeding pending in said court.

On July 30, 1930, the Superior Oil Corporation was placed in receivership in the district court of Tulsa county upon the petition of the Exchange National Bank. John Rogers was appointed receiver. After notice was duly given, claimant filed his claim upon three $50,000 promissory notes executed by the Superior Oil Corporation which had been negotiated to him by Naphen & Company, Inc. The receiver filed objections to the allowance of the claim. The matter was referred to a special referee, who, after hearing the evidence offered by the parties, recommended the allowance of the claim for $115,-000, with interest. The district court, upon exceptions, disapproved the referee's recommendation and denied the claim. From said order the claimant appeals.

The grounds of objection submitted by the receiver were that the notes held by claimant were renewals of other notes made by the Superior Oil Corporation (hereinafter referred to as Superior) to Naphen & Company, Inc., on or about October 30, 1929, to evidence a part of the purchase price agreed to be paid Naphen & Company for the capital stock of a Mexico corporation known as Compania de Petroleo "La Totonaca, S. A." (hereinafter referred to as Totonaca); that Naphen & Company and George F. Naphen dominated and controlled La Totonaca and Superior and caused the latter to agree to purchase the aforesaid stock at a price of $1,500,000, of which $1,000,000 was evidenced by promissory notes, of which those described in the claims of Cohen were a part; that the value of said stock was grossly and fraudulently misrepresented to the directors of Superior and that said directors were moved to the agreement of purchase, including the issuance of the notes, by the false representations made to them and by Naphen's exercise of his power to control them; that the notes held by claimant were taken by him with knowledge and notice of such facts as rendered the taking of them in bad faith.

Cohen testified that he loaned the sum of $115,000 to Naphen & Company and took the three promissory notes as collateral security for said loan, and that Naphen & Company was indebted at that time to Wachsman & Wassal, a firm in which Cohen was a limited partner, and that it was orally agreed between the parties that the balance of said notes, when col'ected, should be applied upon the indebtedness of Naphen & Company to Wachsman & Wassal.

The record of the evidence taken before the referee is voluminous. Evidence was produced relating to a number of transactions for the purpose of showing that Naphen was a dominant and controlling figure in the affairs of Superior, and that he exercised such domination and control to his personal advantage; that said transactions finally culminated in the sale by Naphen of his stock in the Mexican corporation to Superior at a price far in excess of its actual value. Other evidence was offered for the purpose of showing that claimant, Cohen, had such knowledge of the facts and circumstances relating to Naphen's domination and control over the affairs of Superior that he cannot now establish his position as a holder in good faith, for value, without notice.

After hearing the evidence offered by the parties, the referee entered special findings of fact to the effect that Naphen selected and controlled the board of directors of Superior and through his influence with them induced the execution of the notes involved herein; that Naphen grossly misrepresented the actual value of the Totonaca stock; that said stock for which Superior paid the sum of $1,500,000 was actually worth $170,000, and by reason thereof Naphen obtained the execution of said notes by fraud, both actual and constructive. The referee further found that claimant took the notes before maturity, for a valuable consideration, in good faith, without notice of any infirmity in the instruments or defects in the title of the person negotiating them, and that claimant was a holder in due course thereof to the extent of the indebtedness owed to him by Naphen & Company, Inc., being the sum of $115,000, with interest thereon; that Superior was not indebted to claimant for any sum to be collected by him for the use and benefit of Wachsman & Wassal.

The findings of the special master were approved by the district court except the finding that. Cohen was a holder in due course, and in lieu thereof the court found as follows:

"On December 9, 1929, William W. Cohen knew that George F. Naphen was embarrassed financially on account of the crash in the stock market of October 29, 1929, and subsequent thereto, and that the Superior Oil Corporation notes were made two days after said crash in favor of Naphen & Company, Incorporated, and that it was controlled by George F. Naphan; he also knew that George F. Naphen was in a hurry to get the money; he also knew that for some time George F. Naphen had traded extensively in Superior Oil Corporation stock through his firm of Wachsman & Wassal, and that George F. Naphen owned a substantial interest in Superior Oil Corporation stock; he thought that George F. Naphen was in position to make Superior Oil Corporation one of the big small oil companies of the middle west, as he knew he had been successful in the Creole Company and the Lago Company; in January, 1930, William W. Cohen asked George F. Naphen to get him put on the board of directors of Superior Oil Corporation, which George F. Naphen succeeded in doing, despite the fact that William W. Cohen was not acquainted with any of the other members of the board of directors; William W. Cohen knew, at the time he took said original notes on December 9, 1929, of the relative position of George F. Naphen and Naphen & Company, Incorporated, to Superior Oil Corporation, and that it was one of dominance; although William W. Cohen knew that the three notes tendered as collateral were made by one corporation which was dominated by George F. Naphen, to another corporation which George F. Naphen likewise dominated, and he had opportunity to inquire into and determine the consideration for said notes, yet made no such inquiry; if inquiry had been made he would have ascertained that the notes were fraudulently secured, and that the directors were ignorant of the Totonaca transaction and the value of the properties in Mexico, and that they could not intelligently act on their know'edge and part with $1,500,000 of the assets of Superior Oil Corporation unless they were dominated by George F. Naphan for his benefit in said transaction."

It was concluded that claimant was guilty of bad faith.

No question is raised regarding the consideration for the delivery of the notes to Cohen. His testimony as to the loan of money to Naphen & Company is not disputed. Cohen also testified, and the court found as a fact, that before accepting the notes as collateral to the loan made to Naphen & Company, Cohen inquired of the Equitable Trust Company and talked with the vice president thereof to obtain his opinion of the value of the notes; that the vice president of the bank made some investigation from the files of the bank and advised claimant that he considered the notes good from a financial standpoint. As we view it, there is but one

question involved herein and that is whether or not claimant has established his position as a holder in due course.

It is urged that the trial court misapplied the law in placing the burden of proof upon claimant.

Section 11358, O. S. 1931, in part, provides:

"Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course."

In Lambert v. Smith, 53 Okla. 606, 157 P. 909, this court said:

"There being evidence of fraud in the procurement of the note, under the statute the burden was upon the plaintiff, and not upon the defendant, to prove that he acquired title to, the note in due course, which, as we have seen, includes proof that it was taken in good faith, and that at the time the purchaser had no knowledge of any infirmity in the instrument or defect in Vennum's title."

This construction has been uniformly followed by this court in the following cases: Voris v. Birdsall, 62 Okla. 286, 162 P. 951; Besse v. Morgan, 84 Okla. 203, 202 P. 1012; Union State Bank v. Mayor, 88 Okla. 230, 212 P. 987; Jenkins v. Helms, 89 Okla. 77, 213 P. 322; Messman v. Wilt, 91 Okla. 240, 217 P. 412; Voss v. Smith, 98 Okla. 90, 224 P. 328; Glasco v. Wall, 99 Okla. 253, 226 P. 572; Hamil v. Joyner, 103 Okla. 216, 229 P. 768; Sutherland v. First National Bank, 119 Okla. 278, 249 P. 715; Board of Education v. American Natl. Co., 135 Okla. 253, 275 P. 285.

Claimant contends that under the cases of Loomis v. Cole, 119 Okla. 203, 249 P. 327, and Stevens v. Pierce, 79 Okla. 290, 193 P. 417, 18 A. L. R. 7, the burden of showing bad faith on the part of the holder in acquiring the note is upon the maker and not upon the holder. In this case the trial court found that the notes in question had their origin in fraud, and the evidence amply supports such finding. In the view that we have taken of this case it is not necessary for us to consider whether or not the latter cases correctly set forth the rule of law in this jurisdiction, for we find herein that the claimant has discharged said burden of proof. In this connection, however, we call attention to the annotation and authorities set forth in 18 A. L. R. 18.

The principal ground relied upon to establish bad faith on the part of claimant was the failure of claimant to make further inquiry into the transaction regarding the purchase of the stock in the Mexican corporation. It is insisted that if such inquiry had been made, it would have been ascertained that the directors of Superior were ignorant of the value of the properties in Mexico, and therefore would not have parted with the assets of Superior unless they had been dominated by Naphen for his benefit in said transaction; that the duty of claimant to make such investigation arose by virtue of his knowledge that Naphen was financially embarrassed on account of the crash in the stock market and in need of funds; that claimant knew that Naphen controlled Naphen & Company and that his position with Superior was one of dominance, evidenced by the fact that Naphen succeeded sometime after Cohen made the loan in having him appointed on the board of directors of Superior. The uniform rule in this state is that the defense that the holder of negotiable paper is not an innocent purchaser cannot be established by a suspicion of defect of title or the knowledge of circumstances which would excite suspicion in the mind of a prudent man or of circumstances sufficient to put him on inquiry, but that result can be produced only by bad faith on his part. Phillips v. Roper, 171 Okla. 225, 42 P. (2d) 871. In the case of Maze v. Austing, 135 Okla. 71, 273 P. 994, it is said:

"This court has uniformly held, in applying the foregoing section, that suspicion, or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or of circumstances to put one upon inquiry, is not sufficient to defeat the rights of one claiming to be a holder in due course. It is also uniformly held that that result can be produced only by a showing of actual knowledge of the infirmity or defect, or knowledge of such facts that one's action in taking the instrument amounted to bad faith. Circumstances or suspicions may be so cogent and obvious that to remain passive would amount to bad faith, but, in the absence of actual knowledge, bad faith or the absence of it is the test. Forbes v. First National Bank of Enid, 21 Okla. 206, 95 P. 785; McPherrin v. Tittle, 36 Okla. 510, 129 P. 721; Conqueror Trust Co .v. Bayless Drug Co., 75 Okla. 288, 183 P. 419; Sanley v. Wilkinson, 107 Okla. 54, 229 P. 574; Gaither v. First National Bank of Muskogee, 113 Okla. 111, 239 P. 461; Loomis v. Cole, 119 Okla. 203, 249 P. 327."

In the case of Vaughn v. Johnson, 20 Idaho, 669, 119 P. 379, 37 L. R. A. (N. S.) 816, it is said:

"The purchaser of negotiable paper in due course, and before maturity, is under no

duty to make inquiry as to the title to paper, fair and regular on its face, nor is he under any duty to inquire into the consideration given for the note, or of the transaction out of which it arose. McNight v. Parsons, 136 Iowa, 390, 22 L. R. A. (N. S.) 718, 125 Am. St. Rep. 265, 113 N. W. 858, 15 Ann. Cas. 665. He is only chargeable with facts which actually come to his knowledge. Those facts may be actual knowledge of a defect in the title, want of consideration, or such facts as would constitute a defense to the note as between the maker and original payee; or actual knowledge of such facts and circumstances as would lead an honest and fair business man to make further inquiry, and which inquiry, if made, would lead to the discovery of the fraud, defect, and defenses. In other words, it must be actual knowledge of the defenses, or such actual knowledge of facts and circumstances, that a failure to make further inquiry would charge a reasonably prudent business man with bad faith and dishonest motives. Winter v. Nobs, 19 Idaho, 18, 112 P. 525; Park v. Johnson, 20 Idaho. 548. 119 P. 52; Bothwell v. Corum, 135 Ky. 766, 123 S. W. 291."

In the case of Wright v. Gerber (Idaho) 269 P. 85, it is held:

"Purchaser of negotiable paper in due course and before maturity, to become holder in due course under C. S. 5919, 5924, need not make inquiry as to title of paper fair and regular on its face or inquire into the consideration or the transaction out of which the note arose."

See, also, Imperial Gypsum & Oil Corp. v. Chaplin (Cal. App.) 40 P. (2d) 596.

The receiver does not contend that claimant had actual knowledge of the fraud practiced by Naphen in securing the issuance of the notes. Assuming that Naphen was financially embarrassed at the time of the transaction and that such fact was well known to claimant, such a circumstance, at the most, would suggest only a possible motive for fraud. Naphen's alleged dominance in the affairs of Superior could be construed only as providing an opportunity for over-reaching or fraud, but we cannot say that these circumstances furnish such impelling inferences of the commission of actual fraud that a failure on the part of claimant to make further inquiry into the details of the transaction would justify a positive imputation of bad faith and dishonest motives. In the absence thereof the authorities above cited are very clear to the effect that a holder of negotiable paper, in order to establish his position as a holder in due course, is not required to show that he has made inquiry into the consideration given for the note or that he has investigated the details of the transaction out of which it arose. To hold otherwise would be to impose burdens upon purchasers of negotiable paper contrary to the express policy of and not justified by any provision of the Law of Negotiable Instruments.

Even though we should conclude that under the circumstances shown there was a positive duty on the part of claimant to pursue his investigation further, we cannot sustain the conclusion of the trial court. The purchaser of negotiable paper who makes the purchase under circumstances which devolved upon him the duty of inquiring as to its validity assumes no greater risk, by his failure to make inquiry, than the burden of proving that the facts he could have discovered, if he made inquiry, would have protected him. Wilson v. Metropolitan Elevated Railway Company, 120 N. Y. 145. Claimant could be chargeable only with the knowledge of all the facts which an inquiry would have revealed. The record is clear that the notes involved herein were regularly issued by unanimous authority of the board of directors of Superior. It is equally clear that no defense to said notes was claimed by the board of directors nor by any other person prior to the receivership. It appears that after the notes were indorsed to Cohen they were twice renewed, the renewal note being signed by the duly authorized officials of Superior. The Superior at no time prior to the maturity thereof, or to the maturity of any renewals thereof, ever sought to disaffirm the transaction for any reason, but, on the other hand, the obligations were unanimously recognized as valid and binding.

In the light of the authorities, it is evident that claimant has sustained his position as a holder in due course to the extent of the money loaned to Naphen & Company, and the finding of the trial court is without evidence to support the same.

It is insisted by claimant, however, that he is entitled to recover the full amount of the three promissory notes and not the amount of the loan to Naphen & Company on the theory that in so far as the $35,000 excess is concerned he was the holder of the negotiable paper subject to a trust in favor of Wachsman & Wassal by virtue of an agreement, made at the time the loan was negotiated; that the difference between the amount loaned and the value of the notes should be applied to a certain indebtedness owed by Naphen & Company to Wachsman & Wassal. in which firm claimant was a limited partner. There is no dispute but that the loan made by Cohen to Naphen & Company was out of his own funds; that he took the notes individually and that he held

them for his own account and that Wachsman & Wassal had no interest in the funds loaned by claimant to Naphen & Company. The nature of the agreement is evidenced by a letter dated April 30, 1930, from Naphen & Company to Wachsman & Wassal as follows:

"Gentlemen:

"We have instructed William W. Cohen to apply to our account with you, when collected, the sum of $35,000, which is the difference between the $115,000 he loaned us, and the $150,000 of Superior Oil Corporation notes, which he holds as collateral for this loan.

"This is to be credited to our account on your books."

It must be borne in mind that the notes involved herein had their origin in fraud and that claimant's recovery is sustained only upon the theory that he was a holder in due course. In consideration of all the evidence on the point, it does not appear that there was a negotiation and delivery of the notes, for value, to Wachsman & Wassal, but a mere assignment of a portion of the proceeds, when collected. The holder of such an assignment is not a holder in due course, and instead holds the same subject to equities existing in favor of the makers of the paper. There is no merit in this contention, and claimant is entitled to recover only the amount of the loan made to Naphen & Company, together with interest thereon.

The judgment of the trial court is reversed and the cause remanded, with directions to enter judgment in conformity with the views herein expressed.

McNEILL, C. J., and BAYLESS, BUSBY, WELCH, PHELPS, CORN, and GIBSON, JJ., concur. RILEY, J., absent.